## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. HARDWICK FARMERS ELEVA- TOR COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 25. Argued November 25, 1912.—Decided January 6, 1913.

By the Hepburn Act of June 29, 1906, 34 Stat. 584, c. 3591, Congress legislated concerning the deliveries of cars in interstate commerce, and made it the duty of the carrier to provide and furnish transportation.

There can be no divided authority over interstate commerce, and regulations of Congress on that subject are supreme.

As to those subjects upon which the States may act in the absence of legislation by Congress, the power of the State ceases the moment Congress exerts its paramount authority thereover.

Since the enactment of the Hepburn Act it is beyond the power of a State to regulate the delivery of cars for interstate shipments, and so *held* as to the Reciprocal Demurrage Law of Minnesota of 1907.

110 Minnesota, 25, reversed.

A. STATUTE passed by the legislature of the State of Minnesota and known as the Minnesota Reciprocal Demurrage Law, became effective on July 1, 1907. Laws of Minnesota, 1907, chapter 23.

The law, among other things, made it the duty of a railway company subject to its provisions, on demand by a shipper, to furnish cars for transportation of freight, at terminal points on its line of road in Minnesota within forty-eight hours and at intermediate points within seventy-two hours after such demand, Sundays and legal holidays excepted. For each day's delay in furnishing cars when so demanded—except when prevented by strikes, public calamities, accident, or any cause not within the power of the railroad to prevent—the defaulting company was made liable to pay to the shipper one

dollar per car together with the damages sustained and a reasonable attorney's fee.

Alleging that in respect of delays in the deliveries to it of fourteen freight cars, pursuant to eight applications made for such cars between September 19, 1907, and October 22, 1907, the first section of the act in question had been violated, the Hardwick Farmers Elevator Company, defendant in error here, commenced this action in a district court of Minnesota to recover from the railway company, plaintiff in error here, penalties aggregating two hundred and eighteen dollars and an attorney's fee of fifty dollars, together with the costs and disbursements of the action. As a defense the railway company set up that the cars in question were demanded for the purpose of interstate traffic and that the delays complained of were occasioned solely by an unusual and unprecedented congestion of traffic and a consequent scarcity of cars arising from their use in moving traffic and commerce between the States, and that such delays therefore arose from causes not within the control and power of the company. It was also claimed that if the statute in question embraced interstate commerce and was applied to the requisitions for cars referred to in the complaint it would be repugnant to the commerce clause and to the due process and equal protection clauses of the Constitution of the United States. The action was tried to a jury. The trial judge refused to give instructions asked for by the railway company embodying the constitutional objections made in its answer. A verdict was returned for the plaintiff for the amount claimed including an attorney's fee; and a judgment entered on the verdict was affirmed by the Supreme Court of the State. 110 Minnesota, 25.

Mr. M. V. Seymour, with whom Mr. Edward C. Stringer and Mr. Edward S. Stringer were on the brief, for plaintiff in error:

All of the consignments concerned in this suit are interstate shipments notwithstanding the fact that in some cases place of origin and place of destination are both in Minnesota. *Railroad Commission* v. *C., St. P. M. & O. Ry. Co.*, 40 Minnesota, 267; *Hanley* v. *Kansas City Southern Ry. Co.*, 187 U. S. 617.

The history of the act and the practical construction placed upon the so-called Reciprocal Demurrage Law by the state authorities and the Interstate Commerce Commission show that the gravest doubt has been expressed with respect to the validity of this measure, so far as it may concern interstate commerce.

The Interstate Commerce Commission, before commencement of this suit, had directed railway companies to disregard all laws of this character as applied to interstate commerce. See Tariff Circular No. 18 A, p. 108, Feb. 13, 1911, effective March 31, 1911, citing *Houston & Texas Central R. R. Co.* v. *Mayes*, 201 U. S. 321. And see *Wilson Produce Co.* v. *Pennsylvania R. R. Co.*, 14 I. C. C. Rep. 170.

The authority vested in Congress by the commerce clause of the Constitution covers everything related to the delivery of freight, and transportation between the States. *Rhodes* v. *Iowa*, 170 U. S. 412, 426; *Bowman* v. *Chi. & N. W. Ry. Co.*, 125 U. S. 465; *McNeil* v. *Southern Ry. Co.*, 202 U. S. 543, 559; and see *Int. Com. Comm.* v. *Detroit, G. H. & Mil. Ry. Co.*, 167 U. S. 633.

If the individual States were permitted to legislate in this field, endless confusion and discrimination would be the result. Such legislation would operate as a direct burden upon interstate commerce. Cases *supra* and *Wabash, St. L. & Pac. Ry. Co.* v. *Illinois*, 118 U. S. 557; *Central of Georgia Ry. Co.* v. *Murphy*, 196 U. S. 194, 204.

The duty of regulating terminal charges when related to interstate transportation has been lodged with the

Interstate Commerce Commission. *United States* v. *Standard Oil Co.*, 148 Fed. Rep. 719, 722; *Michie* v. *New York, N. H. & Hartford R. R. Co.*, 151 Fed. Rep. 694.

The nature of the Act to Regulate Interstate Commerce and the manifest purpose disclosed by it, especially by the Hepburn Amendment, is to assume and exercise complete control over all terminal charges in respect of interstate commerce.

State laws and decisions upon so-called reciprocal demurrage laws sustain these contentions. See Act of North Dakota, Ch. 153, 1907; Ch. 671, Laws of 1909, April 20, of California; Act of 1909 of Nebraska; § 2, Act No. 193, Arkansas, 1907; *St. Louis, I. M. & Sou. Ry. Co.* v. *Hampton*, 162 Fed. Rep. 693. But see *Oliver & Son* v. *Railway Co.*, 117 S. W. Rep. 238; *S. C.*, 89 Arkansas, 466; *St. L. & S. F. R. Co.* v. *Allen*, 181 Fed. Rep. 710; *Darlington Lumber Co.* v. *Missouri Pacific Ry. Co.*, 216 Missouri, 658; *C., R. I. & P. Ry. Co.* v. *Beatty*, 118 Pac. Rep. 367; *St. L. & S. F. R. R. Co.* v. *Oklahoma*, 107 Pac. Rep. 929; *Gulf, Col. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98; *Patterson* v. *Missouri Pacific Ry. Co.*, 77 Kansas, 236.

The North Carolina law penalizing railroad companies fifty dollars for each day's refusal to receive freight brought for shipment, was upheld, but by a divided court. *Reid & Beam* v. *Southern Railway Company*, 150 Nor. Car. 753. As to the rule in Virginia, see *Atlantic Coast Line* v. *Commonwealth*, 102 Virginia, 599; *Southern Railway Co.* v. *Commonwealth*, 107 Virginia, 771.

In Texas see *T. & B. Valley Ry. Co.* v. *Geppert*, 135 S. W. Rep. 164.

In Pennsylvania, see *Wilson Produce Co.* v. *Penn. R. R. Co.*, 14 I. C. C. Rep. 170; *Penn. R. R. Co.* v. *Coggins Co.*, 38 Pa. Super. Ct. 129.

The Hepburn Act especially refers to the duty of common carriers to furnish cars and instrumentalities of com-

merce.  The congressional legislation upon this subject is broad, ample, uniform.  A cunningly devised and insidious provision penalizing a railway company for not furnishing cars to a Minnesota shipper, when under the same circumstances no such penalty attaches to the failure to furnish cars to the shipper of another State, can have but one result: that is, preference.  Otherwise, there would be no reason for the enactment of the Minnesota statute as applied to interstate commerce.  If Minnesota can impose a penalty of one dollar per day per car for failure to furnish cars to be employed in interstate commerce, adjoining States will soon have a penalty of ten dollars or twenty dollars, or such amount as will insure preference in the delivery of cars.

If a shipper objects to a carrier's demurrage rule, he must make application to the Interstate Commerce Commission for relief.  *Procter & Gamble* v. *United States,* 188 Fed. Rep. 221; *Southern Pacific Co.* v. *Campbell,* 189 Fed. Rep. 696.

A person engaged in conducting an interstate express business cannot be required by the state or municipal authorities to take out a local license as a prerequisite of conducting his interstate business within the State or municipality.  *Barrett* v. *New York,* 189 Fed. Rep. 268.

Demurrage for the detention of cars either in loading or unloading, is a terminal charge required to be shown by the schedule of rates and to be filed and published by an interstate railroad company by the terms of the Interstate Commerce Act, as amended by the so-called Hepburn Law.  *Lehigh Valley R. R. Co.* v. *United States,* 188 Fed. Rep. 879; and see als ) *Wilson Produce Co.* v. *Penn. R. R. Co.,* 14 I. C. C. Rep. 170, 174; *Peale, Peacock & Kern* v. *C. R. R. of N. J.,* 18 I. C. C. Rep. 25, 33; *Michie* v. *N. Y., N. H. & H. R. R. Co.,* 151 Fed. Rep. 694; *United States* v. *Standard Oil Co.,* 148 Fed. Rep. 719; *Rhodes* v. *Iowa,* 170 U. S. 412; *Bowman* v. *Chicago &c. Ry.,* 125 U. S. 465;

*McNeil* v. *Southern Ry. Co.,* 202 U. S. 543; *Baltimore & Ohio R. R.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Int. Com. Comm.* v. *Illinois Central Ry.,* 215 U. S. 452; *St. Louis &c. Ry. Co.* v. *Arkansas,* 217 U. S. 136; *Union Pacific Railroad Co.* v. *Updike Grain Co.,* 222 U. S. 215; *Southern Railway Co.* v. *Reid,* 222 U. S. 424; *Texas & Pacific Ry. Co.* v. *Abilene Oil Co.,* 204 U. S. 426, 437.

*Mr. C. H. Christopherson* for defendant in error:

The act is constitutional, and the term "reciprocal demurrage" is perhaps not the happiest expression and, as opposing counsel states, it may be a misnomer. A more suitable expression than "Reciprocal Demurrage Law" would be a "law to compel carriers to furnish cars." See *Lehigh Valley R. Co.* v. *United States,* 188 Fed. Rep. 879. While demurrage charges and reciprocal demurrage charges are dissimilar in their legal status, still the latter undoubtedly grew out of the former. *Yazoo & Miss. Valley Ry. Co.* v. *Keystone Lumber Co.,* 43 So. Rep. 605.

In twenty States reciprocal demurrage measures are pending or have been enacted. Nearly all the organizations in the country representing large shippers have asked for reciprocal demurrage.

The act seeks to protect the carrier as well as the shipper. It can only be invoked by those who apply for cars "in good faith" and it does not tolerate discrimination. Report of Attorney-General of Minnesota for 1906, p. 247.

Such a statute is advocated by shippers, railroad commissioners, courts, legislatures, etc.

The validity of such a statute is sustained by text-book writers, railroad commissioners, the Interstate Commerce Commission, legislatures, attorneys general and courts. Watkins on Shippers and Carriers, § 306; Calvert, Regulation of Commerce, Preface, p. 4.

A great majority of the courts entertain the view that

such statutes are constitutional. See *Houston & Texas Central* v. *Mayes,* 201 U. S. 321.

Under the Minnesota statute exceptions are made which remove it from the condemnation of the *Mayes Case,* and the trial court can always protect the railroads by defining the statutory phrases. *St. Louis &c. Ry. Co.* v. *Arkansas,* 217 U. S. 136, can be distinguished. And see *New Mexico* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38; *Cleveland, C., C. & St. L. Ry. Co.* v. *Illinois,* 177 U. S. 514; *Railway Co.* v. *Jacobson,* 179 U. S. 287; *Chicago, R. I. & P. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Missouri, K. & T. R. Co.* v. *Haber,* 169 U. S. 613; *Missouri, K. & T. R. Co.* v. *McCann,* 174 U. S. 580.

For decisions of state courts in regard to regulation of interstate commerce matters, see *Southern Railway Co.* v. *Virginia,* 107 Virginia, 771; *Oliver & Son* v. *Railway Co.,* 117 S. W. Rep. 328; *Patterson* v. *Railway Co.,* 77 Kansas, 236; *Southern Ry. Co.* v. *Atlanta Sand Co.,* 68 S. E. Rep. 807; *Martin* v. *Railway Co.,* 113 Pac. Rep. 16; *Chicago, R. I. & P. Ry. Co.* v. *Beatty,* 118 Pac. Rep. 367.

*St. L. & S. F. R. R. Co.* v. *Oklahoma,* 26 Oklahoma, 62, does not conflict with this case.

Congress has not legislated on the subject, nor has the Interstate Commerce Commission been vested with power in the premises. The Hepburn Act requirements are separate and apart from the purposes and objects of the Minnesota act.

The Hepburn Act took effect January 29, 1906. It was passed to remedy certain deficiencies found to exist in the previous act; but, in so far as it relates to the case at bar it is not broader than the original act.

The Interstate Commerce Commission has held that it had no authority to fix rules and regulations governing reciprocal demurrage. *Mason* v. *C., R. I. & P. Ry. Co.,* 12 I. C. C. Rep. 61; *Richmond Elevator Co.* v. *Railway,* 10 I. C. C. Rep. 629.

The cases cited by plaintiff in error can all be distinguished.

MR. CHIEF JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The argument at bar has been primarily concerned with the question of the validity of the Minnesota statute, considered as having been enacted in the exercise of a power assumed to exist to legislate reasonably in the absence of action by Congress on the subject of the delivery when called for, of cars to be used in interstate traffic. Thus counsel for the defendant in error urges the correctness of the action of the Supreme Court of Minnesota in sustaining the statute upon the hypothesis that Congress had not legislated on the subject and that the act was a reasonable exertion of the power of the State. On the contrary, on behalf of the Railroad Company it is insisted that even upon the assumption that the State had power to deal with the subject for which the statute provides in the absence of legislation by Congress, the enactment is nevertheless void, since it but expresses a policy which by penalization, fines and forfeitures will substitute for a free and unrestrained flow of commerce a service favoring a particular locality and shippers within the confines of one State, to the disadvantage of others. We are not, however, called upon to test the merits of these conflicting contentions, since we are of opinion that by the act of June 29, 1906, 34 Stat. 584, c. 3591, known as the Hepburn Act, amendatory of the act to regulate commerce, Congress has legislated concerning the deliveries of cars in interstate commerce by carriers subject to the act.

In the original act to regulate commerce the term "transportation" was declared to embrace all instrumentalities of shipment or carriage. By the Hepburn Act it was declared that the term transportation (italics ours)—

"shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; *and it shall be the duty of every carrier subject to the provisions of this Act to provide and furnish such transportation upon reasonable request therefor,* and to establish through routes and just and reasonable rates applicable thereto."

The purpose of Congress to specifically impose a duty upon a carrier in respect to the furnishing of cars for interstate traffic is of course by these provisions clearly declared. That Congress was specially concerning itself with that subject is further shown by a proviso inserted to supplement § 1 of the original act imposing the duty under certain circumstances to furnish switch connections for interstate traffic, whereby it is specifically declared that the common carrier making such connections "shall furnish cars for the movement of such traffic to the best of its ability without discrimination in favor of or against any such shipper." Not only is there then a specific duty imposed to furnish cars for interstate traffic upon reasonable request therefor, but other applicable sections of the Act to Regulate Commerce give remedies for the violation of that duty. Thus, by § 8 it is provided "That in case any common carrier subject to the provisions of this act . . . shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damage sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

Further by § 9 an election is given to either make complaint to the Interstate Commerce Commission or to bring, in a designated court, an action for the recovery of damages, and by § 10 it is made a criminal offense for an employé of a corporation carrier to "wilfully omit or fail to do any act, matter, or thing in this act required to be done."

As legislation concerning the delivery of cars for the carriage of interstate traffic was clearly a matter of interstate commerce regulation, even if such subject was embraced within that class of powers concerning which the State had a right to exert its authority in the absence of legislation by Congress, it must follow in consequence of the action of Congress to which we have referred that the power of the State over the subject-matter ceased to exist from the moment that Congress exerted its paramount and all embracing authority over the subject. We say this because the elementary and long settled doctrine is that there can be no divided authority over interstate commerce and that the regulations of Congress on that subject are supreme. It results, therefore, that in a case where from the particular nature of certain subjects the State may exert authority until Congress acts under the assumption that Congress by inaction has tacitly authorized it to do so, action by Congress destroys the possibility of such assumption, since such action, when exerted, covers the whole field and renders the State impotent to deal with a subject over which it had no inherent but only permissive power. *Southern Ry. Co.* v. *Reid,* 222 U. S. 424.

The judgment of the Supreme Court of Minnesota must therefore be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*