# ERIE RAILROAD COMPANY *v.* PEOPLE OF THE STATE OF NEW YORK.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 266. Argued April 24, 27, 1914.—Decided May 25, 1914.

When Congress acts in such manner as to manifest its constitutional authority in regard to interstate commerce the regulating power of the State ceases to exist, and if there is conflict between state and Federal legislation the former must give way.

After Congress acts on a matter within its exclusive jurisdiction there is no division of the field of regulation.

Regulation of the railroads is not a mere wanton exercise of power, but a restriction upon their management induced by public interest and safety; and so *held*, that the Hours of Service Act of 1907 is the judgment of Congress of the necessary extent of such restrictions as to employés engaged in interstate commerce which admits of no supplementary regulation by any of the States.

Provisions in the Labor Law of New York of 1907 relating to the hours of service of railroad telegraph operators engaged in interstate commerce are void in so far as they attempt to regulate interstate commerce, as Congress had completely covered the field by the Hours of Service Act of 1907, although that act did not take effect until March, 1908. *Northern Pacific Railway Co.* v. *Washington*, 222 U. S. 370.

Where the state court did not decide that a general law amounted to a repeal or alteration of the charter of a corporation, the contention that it did so decide cannot be founded on an expression of personal opinion to that effect of the judge writing the opinion.

*Quære*, and not decided in this case, whether it is competent for a State, through its power to alter or repeal charters of railroads incorporated under its laws, so as to displace or share the jurisdiction of Congress over interstate commerce.

Judgment based on 198 N. Y. 369, reversed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of the eight hour provisions of the New York Labor Law of 1907 as applied to railroads,

and employés engaged in interstate commerce, are stated in the opinion.

*Mr. Frederic D. McKenney*, with whom *Mr. George F. Brownell* was on the brief, for plaintiff in error:

Congress by the "Hours of Service Act" of March 4, 1907, having completely regulated the hours of labor of railway employés concerned with the movements of trains, including those making use of the telegraph or telephone for that purpose, the law of the State of New York from the date of its passage was void and of no effect as to all such employés engaged in or performing duties in connection with interstate commerce. And this is so notwithstanding that the prohibitions of the Federal law, by the terms of the act itself, only became effective one year after the date of its passage, that is to say, on March 4, 1908. *Nor. Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; see also *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491, 505, 506; *McDermott* v. *Wisconsin*, 228 U. S. 115, 131–132; *Chicago, Ind. &c. Ry. Co.* v. *Hackett*, 228 U. S. 559, 567; *Simpson* v. *Shepherd*, 230 U. S. 352, 399, 400; and *Missouri* v. *Mo. Pac. Ry. Co.*, 212 Missouri, 658; *Wisconsin* v. *Chic. Mil. & St. P. Ry. Co.*, 136 Wisconsin, 407, cited by this court with approval in *Nor. Pac. Ry. Co.* v. *Washington*.

*Mr. Wilber W. Chambers*, with whom *Mr. Thomas Carmody*, Attorney General of the State of New York, and *Mr. Claude T. Dawes* were on the brief, for defendant in error:

The statute is valid as it is within the reserved power of the State to amend corporate charters. 1 Rev. Stat. N. Y. 1827, 600, § 8; Const. N. Y. of 1846 and 1894, art. VIII, § 1.

As to this power of the State to amend corporate charters, see *Adirondack Railway Co.* v. *New York*, 176 U. S.

335; *New York & New Eng. R. R. Co.* v. *Bristol,* 151 U. S. 556, p. 567; *People* v. *O'Brien,* 111 N. Y. 1; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Lord* v. *Equitable Life Assur. Co.,* 194 N. Y. 212; *N. Y. C. & H. R. R. Co.* v. *Williams,* 199 N. Y. 108.

The only limitation to this general rule is that the power may not be exercised to destroy property or rights guaranteed by the Fourteenth Amendment of the United States Constitution, and by similar provisions of state constitutions. *St. L., I. M. &c. Ry.* v. *Paul,* 173 U. S. 404, 409. See also *State* v. *Brown & Sharpe Mfg. Co.,* 18 R. I. 16; *Berea College* v. *Kentucky,* 211 U. S. 45.

A State's power to control its own corporations is a power quite as vital to the State as the power of interstate commerce is to the Federal Government. It has not been surrendered to the Central Government, and only to the extent that a Federal power conflicts with it is the state power devitalized. See *Minnesota Rate Cases,* 230 U. S. 352, 399.

This court will follow the New York Court of Appeals in its finding that the state legislation in question was enacted under its reserved control over a corporation created by it. *Adirondack Railway* v. *New York,* 176 U. S. 335; *Elmendorf* v. *Taylor,* 10 Wheat. 152, 159; *Forsyth* v. *Hammond,* 166 U. S. 506, 518; *Covington* v. *Kentucky,* 173 U. S. 231, 237; *Schaefer* v. *Werling,* 188 U. S. 516.

The statute is not unconstitutional as an unauthorized interference by the State with interstate commerce, and the decision of this court in *Nor. Pac. Ry.* v. *Washington,* 222 U. S. 370, is not controlling here.

The Hours of Service Act, 34 Stat. 1415, does not apply to employés employed in a State and engaged in intrastate business. In this case the employé was not engaged in interstate commerce; the corporation involved was a domestic corporation over which the legislature of the State of New York had power to amend and repeal its

charter; and the employé was not one of a train crew and the work which he was doing was local or intrastate.

Although the state act affects to some extent the operation of interstate commerce it is none the less local in its character. *Smith* v. *Alabama,* 124 U. S. 465; *Nashville &c. R. R.* v. *Alabama,* 128 U. S. 96.

Regulation of trains engaged in interstate commerce at crossings is within the power of the State. *Southern Ry. Co.* v. *King,* 217 U. S. 524. So also as to the heating of passenger cars and requiring guard posts on bridges. *N. Y., N. H. & H. R. R. Co.* v. *New York,* 165 U. S. 628.

In *West. Un. Tel. Co.* v. *James,* 162 U. S. 650, the state law forbade the running of freight trains on Sunday. In *Hennington* v. *Georgia,* 162 U. S. 299, the statute sustained required railroad companies to fix their rates annually for the transportation of passengers and freight, and also required them to post a printed copy of their rates in passenger stations. See also *Chicago & N. W. R. R.* v. *Fuller,* 17 Wall. 560; *Louis. & Nash. R. R. Co.* v. *Kentucky,* 161 U. S. 677; *Chicago, Mil. & St. P. R. R.* v. *Solon,* 169 U. S. 133; *Richmond & A. R. Co.* v. *Tobacco Co.,* 169 U. S. 311.; *Wisconsin R. R. Co.* v. *Jacobson,* 179 U. S. 287; *Chesapeake &c. Ry.* v. *Kentucky,* 179 U. S. 388; *Louis. & Nash. Ry.* v. *Mississippi,* 133 U. S. 587; *Erb* v. *Morasch,* 177 U. S. 584; *Cleveland, C., C. & St. L. R. R. Co.* v. *Illinois,* 177 U. S. 514.

Congress under its commerce power may, by occupying the entire field of regulation of hours of service on interstate railroads, render nugatory, with respect to that subject, a State's police power or its local power over interstate commerce; but not with the State's power over its own corporations, which continues and gives force to a state statute regulating hours of service except at those points of conflict with the Federal commerce law. Cases *supra,* and see also *Mo., Kans. & Tex. Ry.* v. *Haber,* 169 U. S. 613, 623; *Sinnot* v. *Davenport,* 22 How. 227, 243.

Where there is direct opposition or antagonism between state and Federal law, or Congress under its delegated power over commerce has seen fit to act upon the entire subject, such congressional action is exclusive of any state action under state police or commerce powers. *Tua* v. *Carriere,* 117 U. S. 201; *Gulf, Col. &c. Ry.* v. *Hefley,* 158 U. S. 98; *Nor. Pac. Ry. Co.* v. *Washington,* 222 U. S. 370, 378. See also *Gladson* v. *Minnesota,* 166 U. S. 427, 430; *Lake Shore Ry.* v. *Ohio,* 173 U. S. 285.

In this case the statute is a direct aid to the purpose of the Federal statute, and should be sustained as an additional benefit to the State with no injury to the Federal legislation. *Reid* v. *Colorado,* 187 U. S. 137, 148; *Minn. &c. Ry.* v. *Haber,* 169 U. S. 613; *Wisconsin &c. R. R.* v. *Jacobson,* 179 U. S. 287; *Chi., R. I. & Pac. R. R.* v. *Arkansas,* 219 U. S. 453; *Grand Trunk Ry.* v. *Michigan Ry. Comm.,* 231 U. S. 457.

The state act having been enacted under the reserved power of the State of New York over one of its corporations, and there being no conflict or repugnance between it and the Federal act, the state act should be held to be valid.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action for penalty brought by the people of the State of New York against defendant in error, herein called the railroad company, for an alleged violation of the Labor Law of the State entitled "An Act in relation to labor, constituting chapter thirty-two of the General Laws," as amended by Chapter 627 of the Laws of 1907.[1]

---

[1] "SECTION 1. Chapter four hundred and fifteen of the laws of eighteen hundred and ninety-seven, entitled 'An act in relation to labor, constituting chapter thirty-two of the general laws,' is hereby amended by adding a new section after section seven thereof, to be section seven-*a,* to read as follows:

"SECTION 7-*a.* Regulation of hours of labor of block system telegraph

It is alleged that at the times hereinafter mentioned the railroad company was a corporation under the laws of the State of New York and was and is operating a line of railroad in the State of New York, in Rockland County and

and telephone operators and signalmen on surface, subway and elevated railroads.—The provisions of section seven of this chapter shall not be applicable to employés mentioned herein. It shall be unlawful for any corporation or receiver, operating a line of railroad, either surface, subway or elevated, in whole or in part, in the state of New York, or any officer, agent or representative of such corporation or receiver, to require or permit any telegraph or telephone operator who spaces trains by the use of the telegraph or telephone under what is known and termed the "block system" (defined as follows): Reporting trains to another office or offices or to a train dispatcher operating one or more trains under signals, and telegraph or telephone levermen who manipulate interlocking machines in railroad yards or on main tracks out on the lines or train dispatchers in its service whose duties substantially, as hereinbefore set forth, pertain to the movement of cars, engines or trains on its railroad by the use of the telegraph or telephone in dispatching or reporting trains or receiving or transmitting train orders as interpreted in this section, to be on duty for more than eight hours in a day of twenty-four hours, and it is hereby declared that eight hours shall constitute a day of employment for all laborers or employés engaged in the kind of labor aforesaid; except in cases of extraordinary emergency caused by accident, fire, flood or danger to life or property, and for each hour of labor so performed in any one day in excess of such eight hours, by any such employé, he shall be paid in addition at least one-eighth of his daily compensation. Any person or persons, company or corporation, who shall violate any of the provisions of this section, shall, on conviction, be fined in the sum of not less than one hundred dollars, and such fine shall be recovered by an action in the name of the state of New York, for the use of the state, which shall sue for it against such person, corporation or association violating this act, said suit to be instituted in any court in this state having appropriate jurisdiction. Such fine, when recovered as aforesaid, shall be paid without any deduction whatever, one-half thereof to the informer, and the balance thereof to be paid into the free school fund of the state of New York. The provisions of this act shall not apply to any part of a railroad where not more than eight regular passenger trains in twenty-four hours pass each way; provided, moreover, that where twenty freight trains pass each way generally in each twenty-four hours then the provisions of

other counties, extending from Piermont to Dunkirk, both in that State.

The following facts are also alleged: The railroad company, in violation of § 7-*a* of the Labor Law, required and permitted one David Henion, a telegraph operator, to be on duty more than eight hours, that is, from seven o'clock a. m. to seven o'clock p. m., on the first day of November, 1907, in the railroad company's tower at Sterlington, in the County of Rockland, New York, there being no extraordinary emergency caused by accident, fire, flood or danger to life or property.

His duty was to space trains by the use of the telegraph under what is known and termed the "block system" and to report trains to another office or offices and to train dispatchers, whose duties pertain to the movement of cars, engines and trains on the company's railroad, by the use of the telegraph.

There passed over the tracks of the railroad company on the day named more than eight regular passenger trains each way.

Judgment is prayed in the sum of $100.

The answer of the railroad company admits its incorporation and that it is operating a railroad as alleged, but alleges that its road extends from Jersey City, New Jersey, to Suffern, New York, and from Salamanca, New York, to Marion, State of Ohio, and elsewhere, passing through New Jersey, New York, Pennsylvania and Ohio, and that at all times mentioned in the complaint it was and is now engaged in interstate commerce and the transportation of persons, goods and merchandise by railroad from one State of the United States to other States of the United States, and to foreign countries.

---

this act shall apply, notwithstanding that there may pass a less number of passenger trains than hereinbefore set forth, namely, eight.

"Section 2. This act shall take effect October first, nineteen hundred and seven."

It admits that the company required and permitted Henion to work as charged, but alleges that the cars, engines and trains that he was engaged in spacing and reporting were engaged in interstate commerce.

That the Labor Law of the State violates the Fifth and Fourteenth Amendments to the Constitution of the United States, as applied to Henion and other employés in the same class of work, in that it deprives both the railroad company and Henion of the liberty of contract and of property without due process of law and of the equal protection of the laws.

The answer also set up in defense the Federal "Hours of Service" act, approved March 4, 1907, in force one year after its passage (34 Stat. 1415, c. 2939), entitled "An Act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon."

The law, among other things, authorizes the employment of employés such as Henion was, for nine hours in twenty-four hour periods when employed night and day and for thirteen hours when employed only during the daytime, and, in case of extraordinary emergency, to be on duty for four additional hours in such period on not exceeding three days in any week.[1]

---

[1] "Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours . . .

"Provided, That no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period on all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places and stations operated only during the daytime, except in case

The answer also alleges that the jurisdiction of Congress is exclusive, and that the Labor Law of 1907 is in excess of the power of the legislature of the State of New York and unconstitutional and void, in that it is an attempt to regulate commerce between the States.

A jury was waived and the case tried by the court, which found the facts as alleged in the complaint and that upon the trains which passed the tower at Sterlington there "were passengers whose journey commenced and ended in the State of New York and did not extend into any other State, and some of said trains carrying passengers and property from one point to another in the State of New York."

As a conclusion of law the court found that the railroad company violated the law, had incurred a penalty of $100 by so doing, and that § 7-*a* of the law "is valid and its provisions do not violate and are not in conflict with the Constitution of the United States or the constitution of the State of New York."

Upon the request of the railroad company the court also found the facts of the interstate character of the railroad as alleged in the answer and that Henion employed as alleged, and found a number of other facts concerning the manner of operating the "block system" and the duties of Henion. There were also findings relative to the Labor Law, the Penal Law, so called, and the act of Congress of March 4, 1907. The findings only serve to emphasize the defenses of the company and need not be set out at length.

The court also made the following findings:

"That at all times mentioned in the complaint or hereinafter mentioned, the defendant was, and now is, engaged in interstate commerce, and the transportation of persons,

of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week; . . ."

goods and merchandise by railroad from one State of the United States to other States of the United States.

"On that day [the day Henion was employed] there were fourteen eastbound and twelve westbound passenger trains, and twelve eastbound and fifteen westbound freight trains, which passed the Sterlington tower during said twelve hours.

"On November 1st, 1907, a majority of the trains which the said David Henion was engaged in spacing and reporting were engaged in interstate commerce, or in the transportation of passengers, persons, or property from one State to another."

The court refused to find—"That on November 1, 1907, said David Henion in the performance of his duties was an employé of the defendant engaged in interstate commerce."

The court further found that the effect of the Labor Law "was materially to increase the cost to the Erie Railroad Company of operating the 'Block System.'"

Judgment was entered for the penalty sued for. It was reversed by the Appellate Division, and a new trial granted, the court deciding that the jurisdiction of the subject-matter was exclusively in Congress and was exercised by the Hours of Service Law of March 4, 1907.

The Court of Appeals reversed the action of the Appellate Division and affirmed the judgment of the trial court. The Court of Appeals rested its decision on three propositions: (1) The Labor Law of the State was a legal exercise of the police power of the State. (2) There was no conflict between it and the act of Congress of March 4, 1907. "The State," the court said (198 N. Y., p. 381) "has simply supplemented the action of the Federal authorities. It is the same as if Congress had enacted that the classes of employés named might be employed for nine hours or less, and the State had then fixed the lesser number, which was left open by the Federal statute. The form of the latter

fixed the outside limit, but not expressly legalizing employ-
ment up to that limit, fairly seems to have invited and to
have left the subject open for supplemental state legislation
if necessary." (3) A statute does not become controlling
until it actually becomes operative and that therefore, even
if it should be decided that there was a conflict between the
Federal and the state legislation after the former became
effective, as the act of Congress did not take effect until
March 4, 1908, in the meantime the state law was in
operation.

The propositions decided by the Court of Appeals ex-
press the contentions made here by defendant in error
and they are attempted to be supported by a citation of a
number of cases in which this court has sustained legisla-
tion by the States more or less affecting interstate com-
merce. A review of them is unnecessary. Whatever diffi-
culty may otherwise have been in the questions presented
by the record have been met and overcome by decisions
more apposite than the cited cases. The relative suprem-
acy of the state and National power over interstate com-
merce need not be commented upon. Where there is
conflict the state legislation must give way. Indeed, when
Congress acts in such a way as to manifest its purpose to
exercise its constitutional authority the regulating power
of the State ceases to exist. *Adams Express Co.* v. *Cron-
inger*, 226 U. S. 491, and cases cited. Also *Chicago, R. I.
& Pac. Ry. Co.* v. *Hardwick Elevator Co.*, 226 U. S. 426;
*Chicago, Ind. & L. Ry. Co.* v. *Hackett*, 228 U. S. 559; *Mc-
Dermott* v. *Wisconsin*, 228 U. S. 115; *Minnesota Rate Cases*,
230 U. S. 352; *Taylor* v. *Taylor*, 232 U. S. 363.

This is the general principle. It was given application
to an instance like that in the case at bar in *Northern
Pacific Ry.* v. *Washington*, 222 U. S. 370. The case arose
upon an asserted conflict between the Hours of Service
Law of March 4, 1907, the one involved here, and a law
of the State of Washington which also regulated the hours

of railway employés. The latter became effective June 12, 1907, that is, before the time the Federal Hours of Service Law was in force but after its enactment. The state act resembled the Federal act, and prohibited the consecutive hours of service which had taken place on the Northern Pacific Railroad and on account of which the action was brought by the Attorney General of the State against the company for the penalties prescribed for violation of the act. The railroad company admitted the facts but denied liability under the act, asserting that its train was an interstate train and was not subject to the control of the State because within the exclusive control of Congress on that subject. The trial court granted a motion for judgment on the pleadings, which was affirmed by the Supreme Court of the State. That court held that the train was an interstate train and conceded that Congress might prescribe the number of consecutive hours an employé of a carrier so engaged should be required to remain on duty; and when it so legislated upon the subject, its act superseded any and all state legislation on that particular subject. But the court held that the act of Congress did not apply because of its provision that it should not take effect until one year after its passage and until such time it should be treated as not existing.

We reversed the judgment on the ground that the view expressed was not "compatible with the paramount power of Congress over interstate commerce," and we considered it elementary that the police power of the State could only exist from the silence of Congress upon the subject and ceased when Congress acted or manifested its purpose to call into play its exclusive power. It was further said that the mere fact of the enactment of the act of March 4, 1907, was a manifestation of the will of Congress to bring the subject within its control, and to reason that because Congress chose to make its prohibitions take effect only after a year it was intended to leave the subject to state

power was to cause the act of Congress to destroy itself. There was no conceivable reason, it was said, for postponing the prohibitions if it was contemplated that the state law should apply in the meantime. The reason for the postponement, it was pointed out, was to enable the railroads to meet the new conditions.

The reasoning of the opinion and the decision oppose the contention of defendant in error and of the Court of Appeals, that the state law and the Federal law can stand together, because, as expressed by the Court of Appeals, "the State has simply supplemented the action of the Federal authorities," and, on account of special conditions prevailing within its limits, has raised the limit of safety; and the form of the Federal statute, although "not expressly legalizing employment up to that limit, fairly seems to have invited and to have left the subject open for supplemental state legislation if necessary."

We realize the strength of these observations, but they put out of view, we think, the ground of decision of the cases, and, indeed, the necessary condition of the supremacy of the congressional power. It is not that there may be division of the field of regulation, but an exclusive occupation of it when Congress manifests a purpose to enter it.

Regulation is not intended to be a mere wanton exercise of power. It is a restriction upon the management of the railroads. It is induced by the public interest or safety, and the "Hours of Service" law of March 4, 1907, is the judgment of Congress of the extent of the restriction necessary. It admits of no supplement; it is the prescribed measure of what is necessary and sufficient for the public safety and of the cost and burden which the railroad must endure to secure it.

Defendant in error attempts to distinguish *Northern Pacific Railroad Co.* v. *Washington, supra,* on the ground that the State was dealing with a corporation organized

under the laws of another State, and, the State of Washington had no power to alter or repeal its charter. This power, it is contended, the State of New York has over the Erie Railroad and exercised the power in the law under review, and that the Court of Appeals has so decided. It is asserted besides, that Henion was not engaged in interstate commerce. These assertions are not justified. The Court of Appeals did not decide that the Labor Law constituted an alteration or repeal of the charter of the company. The learned judge who delivered the opinion of the court expressed such to be his view, saying (p. 376) that "if the statute failed as a valid exercise of the police power, personally" he was "not doubtful that under its reserved control over corporations the legislature might pass such an act in regulation of the performance of the business for which a railroad was organized."

It is clear that the learned judge did not express the views of the court. We have no doubt that if the court entertained such view it would have been declared. It would have been a direct and, from the standpoint of the State, an adequate, solution of the questions involved, and would have made unnecessary the elaborate consideration of the extent of the police power of the State and its coincident exercise and adjustment with congressional power of regulation. The contention of defendant in error, therefore, has not the foundation asserted for it, and we may pass it without further comment, not considering whether it is competent for a State, through its power to alter or repeal the charter of railroads incorporated under its laws, to displace or share the jurisdiction of Congress over interstate commerce.

The assertion that Henion was not engaged in interstate commerce is also without foundation and is besides precluded by the opinion of the Court of Appeals. The interstate character of the business was recognized by the court and the law considered in view of such recognition. The

court said (p. 376) "that the Labor Law purports and attempts indiscriminately and inseparably, to regulate the hours of the classes of employés designated whether engaged in interstate or local traffic, and that, therefore, its validity must be tested by the power of the legislature over the former."

The trial court, it is true, undertook to make a distinction between the interstate business of the railroad and Henion's duties, but, in view of the cases which we have cited and of the decision of the Appellate Division and of the Court of Appeals, the distinction is untenable. *Balt. & Ohio R. R. Co.* v. *Interstate Commerce Commission*, 221 U. S. 612; *Second Employers' Liability Cases*, 223 U. S. 1.

*Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*