**UNITED STATES v. NEW YORK CENT. R. CO.**

Civ. A. No. 3341.

District Court, D. Massachusetts.

Jan. 15, 1946.

Edmund J. Brandon, U. S. Atty., and Alfred G. Malagodi, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

George H. Fernald and Louis Kofsky, both of Boston, Mass., for defendant.

FORD, District Judge.

The United States sues the defendant railroad under the Hours of Service Act (hereinafter referred to as the "Hours Act"), 45 U.S.C.A. §§ 61–64 in two counts. The complaint alleges that the defendant, in December 1944, in violation of the Act permitted a telegrapher (Section 62) employed by it to be and remain on duty for a period of twelve hours during a twenty-four-hour period.

The defendant in its answer admits it did require two of its employees to serve for the periods and in the capacity alleged and alleges further it did so as the result of an emergency within the meaning of Section 2 of the Hours Act, 45 U.S.C.A. § 62.

The pertinent facts have been stipulated and are as follows:

The defendant employs three operators at its train-order office at Worcester, Massachusetts, each being on duty eight hours out of twenty-four, since the office is continuously operated night and day. Two of these operators are men, Murphy and Reim, and the third is a woman, Mrs. B. M. Gilmour. Mrs. Gilmour is on duty from 7:59 a.m. until 3:59 p.m. The remaining sixteen hours are divided between Reim and Murphy.

Section 56 of Chapter 149 of the Massachusetts General Laws (Ter.Ed.), as amended by St.1941, cc. 574, 610, reads, in part, as follows: "No child and no wo-

man shall be employed or permitted to work in, or in connection with, any factory or workshop, or any manufacturing, mercantile or mechanical establishment, hospital, telegraph office or telephone exchange, * * * more than nine hours in any one day, * * * ; and in no case shall the hours of labor exceed forty-eight in a week, * * *.".

In order to comply with the state statute referred to in the preceding paragraph, it is the practice to relieve Mrs. Gilmour by an extra operator when she completes forty-eight hours of service as operator within a given week. On December 4, 1944, when Mrs. Gilmour had completed the usual forty-eight hours of service, the extra operator who usually relieved her was not available because he had been directed by his superior officers to fill an assignment at another office, due to the illness of the operator in that other office. Mrs. Gilmour having been relieved from duty in order to comply with the Massachusetts statute, and the usual extra operator not being available, Operator Murphy, who came on duty at 11:59 p.m., December 3, 1944, was instructed by the proper officials to remain on duty until 11:59 a.m., December 4, 1944. Operator Reim was instructed by proper authority to go on duty at 11:59 a.m., December 4, 1944 and continue on duty until 11:59 p.m., on the same date. Each of the two operators named was required and permitted to be and remain on duty for twelve consecutive hours during the twenty-four-hour period beginning at 11:59 p.m., December 3, 1944 and ending at 11:59 p.m., on December 4, 1944, during which time both operators handled train orders pertaining to or affecting the movement of trains.

During the twenty-four-hour period of December 3-4, 1944, Mrs. Gilmour was available and willing to perform her regularly assigned duties as operator in the Worcester Office, but the only reason she was not required or permitted to perform these duties was because of the prohibition contained in the Massachusetts statute set out above.

It will dispose of this case if the following question is answered: Was the defendant under the circumstances here confronted with such an emergency within the meaning of Section 2 of the Hours Act that warranted the defendant's authorized agents to extend the hours of the telegra-

phers to twelve in the twenty-four-hour period referred to?

There is no question the Hours Act was passed with an intention of preventing dangers arising from the inefficiency of employees caused by overwork (Atchison, Topeka & Santa Fe R. Co. v. United States, 244 U.S. 336, 342, 37 S.Ct. 635, 61 L.Ed. 1175, Ann.Cas.1918C, 794), but, as this same case states (244 U.S. 343, 37 S.Ct. 635, 61 L.Ed. 1175, Ann.Cas.1918C, 794) Congress recognized the fact that it might be impracticable in all cases to keep the employment within the hours fixed by the Act and added the except clause in Section 2, 45 U.S.C.A. § 62.[1] (Cf. except clause in Section 3 of the Act). The Supreme Court in the Atchison case [244 U.S. 336, 37 S. Ct. 638] went on to say: "It is * * * the duty of the carrier to do all reasonably within its power to limit the hours of service in accordance with the requirements of the law."

The government argues there was no emergency confronting the railroad in this case because the provisions in the Massachusetts statute protecting the health of women employees by regulating hours of labor differently from those in the Hours Act with respect to telegraphers is invalid. As a basis for its contention the government invokes the well known doctrine that a provision of law passed by a state under its police power which in any way affects interstate commerce with respect to a subject Congress has seen fit to legislate is invalid and void because in such a case the Act of Congress is exclusively controlling and supersedes all state legislation on the subject. Erie R. Co. v. New York, 233 U.S. 671, 34 S.Ct. 756, 58 L.Ed. 1149, 52 L.R.A.,N.S., 266 and Northern Pacific R. Co. v. Washington, 222 U.S. 370, 32 S.Ct. 160, 56 L.Ed. 237. No further citation of cases is needed to show the doctrine stated by the government is well established.

The defendant replies that where Congress has acted with respect to interstate commerce, it will not be deemed to have intended to strike down a state statute passed under the police power designed to protect health unless the purpose to do so is clearly manifest. See Southern Pacific Co. v. Arizona et al., 65 S.Ct. 1515, 1518. And, runs the defendant's argument, Congress in the Hours Act did not manifest its

---

1 "except in case of emergency, * * * the employees * * * may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week."

intention to exercise its authority over the hours of work for women; that this field was left open. It does not seem the argument of the defendant is tenable when reference is made to Section 1 of the Act where "employees" as used in Hours Act are defined as "persons actually engaged in or connected with the movement of any train." No distinction is made between men and women. The Act in its terms covers the hours of employment of all employees employed in the interstate movement of trains. The defendant's contention that Congress was motivated in passing the Hours Act by considerations for the public safety while the state had for its purpose the protection of the health of women, does not aid the defendant in supporting its contention that these were different fields of legislation. Even if the legislative bodies were moved by different considerations, the fact remains that both were regulating hours of service of telegraphers, plainly the same field.

With all this, as this court views the problem here, there is no necessity of finally deciding the validity of the state statute which is involved here collaterally, because I think the case may be disposed of, as I have suggested above, by reaching an affirmative answer to the question whether the defendant found itself confronted with an emergency within the meaning of Section 2 of the Hours Act.

■ An emergency is commonly defined as an unforeseen, sudden, or unexpected combination of circumstances which calls for immediate action. Sudden illness coupled with inability to secure another operator has been held such. United States v. Southern Pacific Co., 8 Cir., 209 F. 562; San Pedro, L. A. & S. L. R. Co. v. United States, 9 Cir., 220 F. 737. The sudden death of an employee's mother has been held to be a "casualty" within the meaning of Section 3 of the Act. United States v. New York O. & W. R. Co., D.C., 216 F. 702. Sudden illness or unavoidable accident would not excuse observance of the provisions of the Hours Act, if the consequence of an emergency could be avoided or mitigated by the exercise of the proper degree of care required. If another employee or employees are present to relieve the situation, a failure to employ then would end an emergency caused by the illness of an operator. San Pedro, L.A. & S.L.R. Co. v. United States, supra, 220 F. 742.

■ The facts here are not in dispute. The illness of a telegraph operator in another office withdrew from the Worcester office the only available operator other than Mrs. Gilmour. If Mrs. Gilmour were not available there is little question that the defendant would have been confronted with an emergency within the meaning of Section 2 of the Hours Act because of the unexpected and warranted withdrawal from the Worcester office of the reserve operator. "Emergency" here does not mean "extraordinary emergency". United States v. Southern Pacific Co., supra. Thus the railroad was confronted with an emergency that could have ended by the employment of Mrs. Gilmour if she were available. But Mrs. Gilmour was made unavailable by a seemingly valid enactment of the Massachusetts legislature. In the Atchison case, supra, 244 U.S. 342, 37 S.Ct. 635, 61 L.Ed. 1175, Ann.Cas.1918C, 794, the Supreme Court stated that it was the duty of the railroad to do all reasonably within its power to limit the hours of service in accordance with the requirement of the Hours Act. Can it be said the railroad here was at fault in its failure to employ Mrs. Gilmour and end the emergency with which it was confronted? I think not. It acted as any reasonable railroad would act under the circumstances. It would place an unreasonable burden upon the defendant here to conclude it should have made the decision the Massachusetts statute was invalid, if in fact it is, before the courts had passed upon the question. The Massachusetts statute is not so plainly invalid that the defendant should have been compelled under the circumstances to take a chance on violating it. The defendant was in a "tight spot." If it employed Mrs. Gilmour in the emergency, it would apparently violate the state statute; if it employed Murphy and Reim it might not violate the federal statute. The defendant should not be penalized for its failure to relieve an emergency under these circumstances. To do so, would exact from the railroad a standard of conduct not demanded of it in observing the provisions of the Hours Act. The defendant acted as any reasonable person would have acted under the circumstances in this case and should not be penalized for so doing.

It is my conclusion the defendant is not liable for the penalties sought to be imposed by the government.

Judgment for the defendant. No costs.