**CITY OF DAVENPORT, a municipal corporation of the State of IOWA, and Davenport Bridge Commission, a police body corporate and politic of the State of Illinois, Plaintiffs,**

v.

**THREE-FIFTHS OF AN ACRE OF LAND, MORE OR LESS, located IN the CITY OF MOLINE, Rock Island County ILLINOIS, City of Moline, a municipal corporation of the State of Illinois, and Unknown Owners, Defendants.**

Civ. A. No. P–1875.

United States District Court
S. D. Illinois N. D.

Jan. 15, 1957.

Lane & Waterman, Davenport, Iowa, Graham, Califf & Harper, Moline, Ill., for plaintiffs.

Wilmot F. Warner and H. Moss Meersman, Moline, Ill., Thomas A. Matthews, Chicago, Ill., for defendants.

MERCER, District Judge.

This is an action for the condemnation of four parcels of land located in the City of Moline, Illinois, pursuant to authority granted the plaintiffs herein by the Congress of the United States in Public Law No. 566 of the 82d Congress, 66 Stat. 734.

The lands sought to be acquired in these proceedings are alleged to be necessary for the construction of improvements and additions to the Iowa-Illinois Memorial Bridge which spans the Mississippi River between Bettendorf, Iowa and Moline, Illinois. Public Law No. 566 of the 82d Congress authorizes the additions to the existing bridge, including the construction of a new span adjacent to and interconnecting to the existing span.

The act further confers upon the plaintiffs the power of eminent domain to acquire property necessary for such improvements and additions. This action was commenced under Rule 71A of the Rules of Civil Procedure, 28 U.S.C.A., seeking to exercise the powers so conferred. The defendant City of Moline has filed a motion to dismiss the complaint. The motion challenges the legal sufficiency of the complaint and raises the issue of law as to whether or not the plaintiffs have power and authority to condemn public property of the City of Moline under the allegations set forth in the complaint. Plaintiffs have filed countermotions for summary judgment.

The first issue presented by plaintiffs' motions relates to the failure of defendant City of Moline to answer the complaint as required by Rule 71A(e), of the Rules of Civil Procedure, which provides as follows:

"Appearance or Answer: If a defendant has no objection or defense to the taking of his property, he may serve a notice of appearance designating the property in which he claims to be interested. Thereafter he shall receive notice of all proceedings affecting it. If a defendant has any objection or defense to the taking of his property, he shall serve

his answer within 20 days after the service of notice upon him. The answer shall identify the property in which he claims to have an interest, state the nature and extent of the interest claimed, and state all his objections and defenses to the taking of his property. A defendant waives all defenses and objections not so presented, but at the trial of the issue of just compensation, whether or not he has previously appeared or answered, he may present evidence as to the amount of the compensation to be paid for his property, and he may share in the distribution of the award. No other pleading or motion asserting any additional defense or objection shall be allowed."

 In lieu of an answer as contemplated by the provisions of the above rule, the defendant filed a motion to dismiss although the rule specifically prohibits the filing of any pleading or motion other than an answer. The obvious purpose of Rule 71A(e) is to prevent delay and dilatory tactics on the part of the defendant. It is quite possible that the defendant, not having answered within 20 days, has waived any objections or defenses to the taking of its property. However, the Courts should and do construe the rules of civil procedure so as to work substantial justice in all cases and avoid a strict technical interpretation which might work a hardship on the litigants. With this in mind the Court will consider the motion to dismiss as an answer in order that the matter may be determined upon its merits rather than upon a strict construction of procedure. The defendant has had numerous opportunities to ask the Court that the motion to dismiss be withdrawn and answer made; had such a request been made the Court no doubt, exercising a sound discretion, would have permitted the substitution. This has not been done but the Court is convinced that the defendant has not engaged in any dilatory tactics and the Court is constrained to deny the motion for summary judgment on the basis of the procedural question and said motion upon the procedural matter is denied.

The second ground in support of plaintiffs' motion for summary judgment is directed to the legal question of plaintiffs' power under Congressional legislation to condemn property owned by the City of Moline and devoted to public use. This is the substantive question in the case and the Court feels that this substantive question should be answered and the case determined by said finding rather than upon a question of a construction of Rule 71A(e).

The affidavit of A. E. Anderson, attached to City of Moline's motion to dismiss, shows that a portion of the property sought to be condemned is devoted to public use and that a portion of the property sought to be acquired shows that the same may be devoted to public use in the future. This future public use is, to some extent, speculative, however, there is little question that the public use question is involved herein.

 The power to condemn is found in Public Law No. 566 of the 82d Congress. It confers "the right and power to enter upon and acquire, condemn, occupy, possess, and use such real estate and other property as may be needed upon making just compensation therefor." It is well settled that in the area of interstate commerce, including the regulation of the use of navigable streams and the erection of dams therein and bridges thereover, federal power is exclusive when the Congrss has chosen to act. Defendant contends that the construction of a bridge is not within the federal power over interstate commerce and is not specifically mentioned as one of the functions of the United States Government in the Constitution as is the construction of a postoffice or military fortification. However, the preamble to the original Act of Congress, Public Law No. 533, approved May 26, 1928, 45 Stat. 759, provides as follows: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That, in order to facilitate interstate commerce, improve the

postal service, and provide for military and other purposes [naming grantees] are hereby, authorized to construct, maintain, and operate a bridge and approaches thereto across the Mississippi River."

It is the opinion of the Court that the original Act of Congress comes clearly with the Federal power over Interstate Commerce. The constitutionality of the above Act has not been challenged and in the opinion of this Court could not be successfully challenged since the power of Congress in this regard has been recognized by the Supreme Court whenever the issue has been presented. In Luxton v. North River Bridge Co., 153 U.S. 525, at page 530, 14 S.Ct. 891, at page 892, 38 L.Ed. 808, the Court said * * * "From these premises, the conclusion appears to be inevitable that, although congress may, if it sees fit, and as it has often done, recognize and approve bridges erected by authority of two states across navigable waters between them, it may * * * use its sovereign powers, directly or through a corporation created for that object, to construct bridges for the accommodation of interstate commerce by land, as it undoubtedly may to improve the navigation of rivers for the convenience of interstate commerce by water." At page 533 of 153 U.S., at page 894 of 14 S.Ct., the Court further stated: "In [State of] California v. [California] Pacific Railroad Co., 127 U.S. 1, 8 S.Ct. 1073 [32 L.Ed. 150], it was directly adjudged that congress has authority, in the exercise of its power to regulate commerce among the several states, to authorize corporations to construct railroads across the states as well as the territories of the United States * * *. 'It cannot at the present day be doubted that congress, under the power to regulate commerce among the several states, as well as to provide for postal accommodations and military exigencies, had authority to pass these laws. The power to construct, or to authorize individuals or corporations to construct, national highways and bridges from state to state, is essential to the complete control and regulation of interstate commerce. Without authority in congress to establish and maintain such highways and bridges, it would be without authority to regulate one of the most important adjuncts of commerce.' "

The principal contention of the defendant City of Moline is that the Congress does not have the power to condemn land owned by any state or a subdivision thereof, that the Congress does not have unlimited powers and has only such powers as are delegated to it by the Constitution of the United States and that these powers do not include the destruction of the sovereign powers of any state nor does it contain the power to condemn land owned by any state or subdivision thereof.

It is well settled that in the area of Interstate Commerce, including the regulation of the use of navigable streams and the erection of dams therein and bridges thereover, the Federal power is exclusive when the Congress has chosen to act. In this case, the plaintiffs as donees of the power have been empowered by special act of Congress to construct improvements to the existing bridge between Bettendorf, Iowa and Moline, Illinois, and in connection therewith to condemn real estate necessary for the construction of such improvements. If the State of Illinois or the City of Moline could supersede or prevent the exercise of this power of eminent domain it would be impossible to construct the authorized improvements. The inability of the States so to condition a right granted by Congress within its constitutional powers has often been made clear by both federal and state courts.

In People v. Hudson River Connecting Railroad Corporation, 228 N.Y. 203, 126 N.E. 801, the Court held that the federal government having authorized a bridge over navigable waters, possessed exclusive power with respect to the authority so granted and that the state was powerless to make unlawful the bridge so authorized. The defendant had been granted the right by Congress and by the New York Legislature to build a bridge across

the Hudson River. Plans were approved by the Chief of Engineers and the Secretary of War. A controversy arose however between the defendant and the State of New York as to the type of bridge to be constructed and the State of New York brought this action against the defendant to enjoin the erection of the bridge. The State of New York had subsequently repealed its statutory authorization for the erection of the bridge and had required approval of the State Engineers and Superintendent of Public Works before this bridge could be erected. The Court held that the state could not make unlawful what an Act of Congress had authorized. It was held that the State had no power to condition or nullify the powers granted by the Congress to erect the bridge over a navigable stream. The Court cited with approval the decision of the Supreme Court in Erie Railroad Co. v. People of State of New York, 233 U.S. 671, 34 S.Ct. 756, 58 L.Ed. 1149, in which it was held that when Congress acts in such manner as to manifest its constitutional authority in regard to interstate commerce the regulating power of the state ceases to exist. A like decision was made in the case of City of Newark v. Central Railroad of New Jersey, 3 Cir., 297 F. 77, 82. The Court held that the consent of the State of New Jersey was unnecessary for the construction of a bridge across the mouth of Newark Bay, the Court stating * * "If the consent of a state were necessary before a bridge could be built over navigable waters within its borders, the power of regulating commerce among the states and with foreign nations would reside in the states and not in the Congress. In the case at bar, Congress has authorized the construction of the bridge notwithstanding the opposition of the state of New Jersey. Its power to do this was plenary and may not be interfered with by that state."

In the above case the Court referred to a provision of the Constitution delegating to the United States the power to regulate commerce and held that such power extends to the regulation of commerce on both land and water, to the control of the navigable waters of the country and the lands under them, and to the erection of piers, bridges and all other instrumentalities of commerce, which, in the judgment of Congress, may be necessary or expedient for the exercise of this power. The power of Congress is supreme and is not rendered impotent by anything a state may or can do. Whether the waters are wholly within the boundaries of one state or lie between or extend into two states is immaterial. The Court observed that Congress authorized the construction of the bridge notwithstanding the opposition of the State of New Jersey and concluded that the power of Congress was plenary, supreme and exclusive.

In Latinette v. City of St. Louis, 7 Cir., 201 F. 676, 678, the landowner raised the question of the power of the City of St. Louis, grantee of the federal power of eminent domain, to condemn land in the State of Illinois. The landowner denied both the jurisdiction of the federal courts and the power of the Missouri city to condemn Illinois lands for bridge purposes without authority under Illinois law. The Court held that the City of St. Louis could not be prevented by the State of Illinois from exercising the powers delegated to it by Congress. The Court stated: * * * "Condemnation is an attribute of sovereignty. It must be exercised directly by the sovereign or through an agency appointed by the sovereign. Neither the power nor the selection of agents can be transferred to another. States have the power only for state purposes; the nation, only for national purposes. So, the power to condemn mentioned in section 2 must be referred to the national power. * * * That the construction and operation of the bridge across the Mississippi, so that the bridge should not obstruct navigation of the waterway, and that the bridge and its necessary approaches might serve as a postroad and as a landway for interstate commerce, were national matters, that the nation had the right itself to build and maintain the bridge and ap-

proaches, and, for the purpose of acquiring land for the approaches, to exercise the power of eminent domain either directly or through a corporation created by it for that end, without the consent or over the objection of the state—are propositions too well settled to warrant elaboration or debate. [Citing cases.] Contention is therefore narrowed to this: That Congress could not constitutionally select appellee as the agency through which a national power should be exercised. Nothing in the Constitution forbids the selection of a state corporation as a national agent. In reason the material thing is the principal's authority, not the parentage or birthplace of the agent."

■ It is true as contended by the City of Moline, that the language of the Act of Congress does not specifically authorize the condemnation of property presently devoted to a public use. Congress has the power to authorize the condemnation of such property, the most recent U. S. Supreme Court decision on this point is, United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209. The question for determination is whether Congress has in fact exercised its power to confer the right to take such property. This is a matter of the construction of the Act itself. In construing similar statutes the Courts have uniformly held that a general Congressional grant of the power of eminent domain includes the power to take property devoted to public use if the improvement or construction authorized by Congress cannot be undertaken without acquiring and using such property. The leading case on this subject is State of Missouri ex rel. and to Use of Camden County, Mo. v. Union Electric Light & Power Co., D. C., 42 F.2d 692, 698. The principal question involved in this case was the right and power of a private public utility company, owner of a federal license to dam a navigable river and grantee of the federal power of eminent domain, to condemn and inundate public lands, including public roads and courthouse grounds. Since the authorized construction of the

dam could not be undertaken without acquiring property in public use, the Court found the power to exist by necessary implication, stating the rule as follows: "While it is well settled that the Legislature may authorize the taking of property already devoted to a public use, it is equally well established that a general delegation of the power of eminent domain does not authorize the taking of property already devoted to a public use, 'unless it can clearly be inferred from the nature of the improvements authorized or from the impracticability of constructing them without encroaching upon such property that the legislature intended to authorize such a taking.' * * * In this connection it cannot be questioned but that the Congress had the power to confer the right of eminent domain upon the defendant Union Electric Light & Power Company. * * * In the instant case the Congress must have contemplated this identical situation; hence the requirement of notice. Moreover, the proposed improvements could not be accomplished, except through the exercise, if necessary, of eminent domain against property already dedicated to public use. To deny the right of eminent domain as against this public property would not only defeat the functions of the national government, but would run contrary to the obvious intent of the Congress."

Another case involving the rule of implied necessity is found in United States v. 60 Acres, etc., D.C.E.D.Ill., 28 F.Supp. 368, 373, in which a suit had been brought by the United States in connection with the program being carried out by the Department of Agriculture under authority of Title II of the National Recovery Act. Directly involved was a Crab Orchard Creek project which involved the construction of a dam that would impound the waters of Crab Orchard Creek into a lake several miles in area which would inundate the lands in question, including certain lands used for public cemeteries and other public uses. The Court assumed that a determination of Congressional intent was necessary, although the government of

the U. S. and not its nominee was the moving party, and declared a rule for determining such intent, saying * * * "A Congressional intention that the United States have the right to condemn any land necessary to the successful construction of the projects lawfully planned under the legislation here in question, even though such land already be devoted to a public use, is clearly apparent and necessarily implied. The dam across Crab Orchard Creek, which is necessary to the accomplishment of the Governmental purpose here, cannot be constructed and used without causing the impounded waters to cover and destroy for public uses the public cemeteries and all other lands being put to public uses within the area of the proposed lake. It has already been held that the project here being carried out is within the lawful provisions of the said legislation. It necessarily follows, therefore, that Congress intended by such legislation to confer the right to acquire by condemnation any lands that may be essential to the establishment of the project whether such lands be wholly private, or devoted wholly, or in part, to public uses. That intention appears from the very language used in the legislation, when the purpose and scope of the entire legislation is considered."

■■ On the question of implied necessity this Court is of the opinion that if the sovereign, such as the United States, on its own behalf, seeks to acquire public property by eminent domain, the character of the property sought as public property has no inhibiting influence upon the exercise of the power; however, if the condemner to whom the power of eminent domain has been delegated, such as a municipality or a private corporation (in this case being the City of Davenport and the Davenport Bridge Commission), seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power

will be denied unless the Congress has authorized the acquisition either expressly or by necessary implication. Such an acquisition cannot be made under a general delegation of the power of eminent domain from the Congress unless it can be clearly inferred from the nature and situation of the proposed work, and from the impracticability of constructing it without encroaching on land already used by the public, that the Congress intended to authorize such property to be taken.

■ Based upon the foregoing observations the Court is confronted with one principal factual issue in determining whether plaintiffs possess the power of eminent domain as to the City of Moline property devoted to a public use. This factual issue is the necessity of acquiring publicly-used property in order to construct the improvements and additions to the present bridge. In Public Law No. 566 of the 82d Congress, Congress has authorized the plaintiffs to enlarge and reconstruct said bridge and approaches, including the construction of a separate but adjacent span across the Mississippi River and approaches thereto with connections with the original span. If the authorized construction of an adjacent span interconnected with the original span can be accomplished without taking such property, the power to appropriate it has not been conferred by Congress. On the other hand if the span cannot be constructed without taking such property Congress, by necessary implication, has authorized its acquisition in its general grant of the power of eminent domain.

The evidence in this case of Clarence W. Hanson, a civil engineer specializing in the design and construction of bridges and with an extensive background of experience and knowledge in bridge construction, discloses that he has made numerous inspections of the existing structure and the property surrounding the termini thereof, both in the City of Moline and in the City of Bettendorf; and the evidence further discloses facts which establish conclusively that it is impos-

sible to construct the new span in a manner authorized by Congress without acquiring property devoted to public use.

The new span by Congressional limitation must be built adjacent to the existing span and it appears there is no location for the new span within this limitation which would or could avoid the use of publicly-used property. If such publicly-used property cannot be acquired, the new span cannot be built and the Act of Congress providing for its construction is a nullity. For this reason it appears to the Court that this case represents a perfect example of the application of the rule of implied necessity and such rule of implied necessity is hereby applied to this case.

It is the Order of the Court that plaintiffs' motion for summary judgment be and the same is hereby allowed. The City of Moline is entitled to further proceedings for the ascertainment of the amount of compensation to which it is entitled for the taking of its property. The parties are hereby directed to take all necessary steps in this Court for the ascertainment of the amount of compensation to which the City of Moline is entitled.