UNITED STATES of America, Plaintiff,

v.

18.2 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF BUTTE, STATE OF CALIFORNIA, the Diamond Match Company, aka Diamond International Corporation and Unknown Owners, Defendants.

Civ. No. S–75–240.

United States District Court, E. D. California.

Dec. 15, 1977.

Dwayne Keyes, U. S. Atty., Richard H. Jenkins, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

McCutchen, Doyle, Brown & Enersen, Richard Murray, Carl Lippenberger, San Francisco, Cal., for defendants.

## OPINION

MacBRIDE, Chief Judge.

This condemnation action had its origins in 1972, when the Bureau of Land Management (BLM) commenced negotiations with defendant Diamond International Corporation, formerly Diamond Match Company, for the purpose of obtaining a permanent, exclusive easement over a part of Road No. 3607 owned by Diamond in Butte County, California. Road No. 3607 provides access to an area subject to a timber sale contract between the United States and the Southern Oregon Land and Timber Company. Additionally, Road 3607 leads to unimproved public domain lands at the Forks of the Butte, a scenic wooded area in the Butte Creek Canyon.

Diamond refused to grant the interest sought but offered the BLM two lesser interests which would provide timber access. The BLM refused Diamond's offer because it would not grant the public access to the Forks of the Butte.

After negotiations eventually broke down, the United States filed the instant condemnation action in this court on April 1, 1975, seeking a permanent, exclusive easement over Diamond's portion of the road. Two days later, in an ex parte proceeding, the United States was granted an order of delivery of possession.

Defendant filed an answer to the complaint on April 29, 1975.[1] On May 19, 1975, the United States filed a motion for summary judgment on defense 2(a) and a motion to strike defenses 2(b) through 2(f) of defendant's answer.

On July 2, 1976, the court approved a stipulation between Diamond and the United States which would permit the United States and its assignees the right to utilize the subject property for the construction, improvement, maintenance, and use of an access road for the purpose of removing forest products under the timber sale contract referred to above.

At a hearing on September 13, 1976, this court granted plaintiff's motion to strike defenses 2(e) and 2(f) of Diamond's answer, which challenged the sufficiency of plaintiff's deposit of $1.00 in the Registry of the Court as estimated compensation.

At the same time, a decision on plaintiff's remaining motions was held in abeyance pending further briefing as to the sufficiency of defendant's contentions as defenses to an eminent domain proceeding. These remaining motions are now before the court.

*Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pursuant to this rule, plaintiff moves for partial summary judgment as to the first defense in defendant's answer, which states: "The purported taking is not authorized by the statutes referred to in the complaint or by any other statute or statutes."

Plaintiff maintains that there is no factual dispute and that the Acts of Congress set forth in the complaint, including 30 U.S.C. § 601, 23 U.S.C. § 214, and 40 U.S.C. § 257, "constitute clear authority" for the condemnation of defendant's land.

Defendant, while apparently conceding that these statutes constitute *general* authority for exercise of the eminent domain power, maintains in opposition to this mo-

---

1. Federal Rule of Civil Procedure 71A(e) requires a defendant to serve his or her answer within 20 days after service of notice upon defendant. Although the complaint was filed on April 1, 1975, it was not served upon defendant until April 10, 1975, so defendant's answer was timely filed.

tion that the statutes do not authorize a taking for the purposes set forth in the pleadings because "the Secretary of the Interior has not lawfully exercised any authority possessed by him." Defendant makes three arguments to support this proposition: (1) plaintiff violated the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.,* by failing to prepare an Environmental Impact Statement; (2) plaintiff used an illegal method of financing construction of the subject road; and (3) plaintiff failed to obtain the approval of the Secretary of Transportation as required by 23 U.S.C. § 214(c).

The thrust of this court's inquiry will be, initially, whether any of the points raised by defendant is a valid defense to a condemnation action. If the court finds that any of defendant's three arguments presents a valid defense, then the court must determine whether plaintiff has satisfied the standards for summary judgment set out in Rule 56.

I. National Environmental Policy Act (NEPA)

NEPA requires all Federal agencies to prepare an Environmental Impact Statement (EIS) on all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Plaintiff seeks summary judgment on the NEPA issue on several grounds:

(1) defendant waived the NEPA issue by failing to raise it in its answer;

(2) defendant does not have standing to raise the NEPA issue;

(3) non-compliance with NEPA is not a legal defense to a condemnation action;

(4) the BLM has determined that the present action is not a "major Federal action significantly affecting the quality of the human environment" and thus an EIS is not required.

A. Waiver

■ Federal Rule of Civil Procedure 71A governs condemnation of property. Subsection (e) provides in pertinent part:

If a defendant has any objection or defense to the taking of his property, he shall serve his answer within 20 days after the service of notice upon him. The answer shall . . . state all his objections and defenses to the taking of his property. A defendant waives all defenses and objections not so presented . . . .

Defendant argues initially that its answer adequately raises the NEPA issue. As defendant puts it:

There has been no waiver. Diamond alleges in its answer that the taking is not authorized by statute. This raises the NEPA issue because an agency acts in excess of its statutory authority when it does not comply with NEPA. See *Environmental Defense Fund, Inc. v. Corps of Engineers,* 325 F.Supp. 749, 763 (E.D. Ark.1971). Thus, the Secretary of Interior does not have statutory authority to take Diamond's land if he has not complied with the requirements of NEPA. (Defendant's Supplemental Memorandum of Points and Authorities at 15)

Were this court constrained to read Rule 71A literally, it would find defendant's argument inadequate. NEPA is not an authorizing statute—it is a statute which imposes an affirmative obligation on Federal agencies when they undertake major projects. To say that NEPA is violated is not the same thing as saying that a particular action is not authorized by statute. However, Rule 71A is not to be read in a vacuum, and the case law provides this court with sufficient justification to be liberal in its interpretation of defendant's answer.

The courts have generally been reluctant to apply the seemingly absolute terms of Rule 71A when it would result in a summary disposition of the case. For example, in *City of Davenport v. Three-Fifths of an Acre of Land,* 147 F.Supp. 794 (S.D.Ill.1957), the defendant, instead of filing an answer to the complaint in condemnation, moved to dismiss. On a countermotion for summary

judgment, plaintiff contended that defendant had waived its objections by its failure to file an answer. The court rejected the contention:

> The obvious purpose of Rule 71A is to prevent delay and dilatory tactics on the part of the defendant. It is quite possible that the defendant, not having answered within 20 days, has waived any objections or defenses to the taking of the property. *However, the Courts should and do construe the rules of civil procedure so as to work substantial justice in all cases and avoid a strict technical interpretation which might work a hardship on the litigants.* With this in mind the Court will consider the motion to dismiss as an answer in order that the matter may be determined upon its merits rather than upon a strict construction of procedure. *Id.* at 796. (emphasis added)

See also *U. S. v. Three Parcels of Land, Etc.,* 224 F.Supp. 873 (D.Alaska 1963).

In *Government of Virgin Islands v. 19.623 Acres of Land,* 536 F.2d 566 (3d Cir. 1976), two defenses were the subject of the appeal. One defense had been raised in a brief in opposition to the government's motion for summary judgment (i. e., identical to the case at bar). The second defense was raised for the first time by the trial court, *sua sponte,* at trial. The Third Circuit, while finding that the second defense was waived under Rule 71A(e), implicitly approved the procedure of raising the first defense in a brief in opposition to summary judgment, since it went on to consider that defense as if it were timely raised.

*Rands v. U. S.,* 367 F.2d 186 (9th Cir. 1966), is perhaps the most significant case supporting a liberal construction of Rule 71A. In *Rands,* the defendant filed a notice of appearance and then, after more than 20 days had elapsed from the filing of the complaint, made a motion requesting to denominate the earlier appearance an answer and to amend it to raise defenses to the taking. The District Court held that the 20 day limit was absolute. The Ninth Circuit, although affirming on an alternative ground, questioned the idea that the Rule 71A(e) time limit was absolute. In doing so, the court relied in large part upon the Advisory Committee's note to Rule 71A(e), which reads in pertinent part:

> subdivision (e) requires all defenses and objections to be presented in an answer and does not authorize a preliminary motion. . . . The general standard of pleading is governed by other rules, particularly Rule 8, and this subdivision (e) merely prescribes what matters the answers should set forth.

From this the court concluded that "a strong case can be made" that Rule 71A(e) is permissive, not mandatory. *Id.* at 188.

The lesson to be learned from *Rands* is that Rule 71A(e) is to be applied in light of the liberal standards of pleading in the other Federal Rules, and especially Rule 8. Such a reading opens the door to a whole battery of notions regarding the purpose of pleadings and the liberality of the procedural rules. Perhaps the most noteworthy case law on the subject is *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While faced with a question of how to construe a complaint, the U.S. Supreme Court used language applicable to both complaint and answers:

> the Federal Rules do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . . Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and other pretrial procedures established . . . to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. . . . The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that *the purpose of pleading is to facilitate a proper decision on the merits.* 355 U.S. at 47, 78

S.Ct. at 103, 2 L.Ed.2d at 84–86. (emphasis added)

There is an additional reason which this court relies upon to reject waiver in the case at bar. Aside from the liberal standards of pleading in the Federal Rules, the broad mandates of NEPA encourage this court to refrain from a summary disposition of the NEPA issue without reaching its merits. As the Ninth Circuit said in a NEPA case in which it refused to apply laches:

> NEPA was enacted to protect the environmental interest of all citizens by making consideration of environmental factors a primary duty of all federal agencies. . . . To make faithful execution of this duty contingent upon the vigilance and diligence of particular environmental plaintiffs would encourage attempts by agencies to evade their important responsibilities. *City of Davis v. Coleman,* 521 F.2d 661, 678 (9th Cir. 1975).

Finally, the court notes that the equities on the waiver issue appear to lie with defendant. First, the NEPA defense is somewhat novel in condemnation cases, so that it might not immediately occur to someone trying to get a foot in the door to protect an interest in property. Secondly, the defense was asserted early in the series of pleadings and briefs filed in this case. Thus, plaintiff has had ample opportunity to argue the NEPA issue on its merits, and it has, in fact, availed itself of these opportunities.

In light of the liberal standards of pleading of the Federal Rules, the broad mandates of NEPA, and the lack of prejudice to *plaintiff which will result, the court finds* that the NEPA issue was not waived.

### B. Standing

▇ Plaintiff's next contention is that defendant lacks standing to raise the NEPA issue.

*Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), is the leading case on standing to raise NEPA. *Morton* used the two-prong test for standing set out in *Association of Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1971): 1) a plaintiff must allege that the challenged action has caused him or her "injury in fact, economic or otherwise," and 2) the interest sought to be protected must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Camp* at 152–153, 90 S.Ct. at 829. The injury in fact test requires that "the party seeking review be himself among the injured." *Morton, supra,* 405 U.S. at 734–35, 92 S.Ct. at 1366.

Defendant has satisfied both prongs of this test. It contends that the government's proposed action will increase recreational use of the surrounding area from 1,000 to 40,000 visitor days per year, and, as a consequence, that Diamond will face "an increased risk of fire, increased litter and waste disposal problems, impaired air quality due to higher vehicle traffic, and direct physical impact caused by trespassers." Clearly such an effect would be an injury in fact impacting directly upon defendant.

Moreover, the Ninth Circuit has been extremely liberal in recognizing standing in NEPA cases. In *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir. 1975), where the court held that the City of Davis had standing to challenge construction of a highway on NEPA grounds, it said:

> The procedural injury implicit in agency failure to prepare an EIS—the creation of a risk that serious environmental impacts will be overlooked—is itself a sufficient "injury in fact" to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he may be expected to suffer whatever environmental consequences the project may have. *Id.* at 671.

Defendant has asserted that the Department of Interior has failed to examine the environmental impact of its action on an area which includes defendant's own land. It is immediately apparent that both the "procedural injury" and the requisite "geographical nexus" are present in this case.

Plaintiff seeks to challenge defendant's standing by suggesting that its interest "is to secure a favorable financial gain or a land exchange," and "not to improve the quality of life for this and future generations." Plaintiff cites, most notably, *Zlotnick v. District of Columbia Redevelopment Land Agency*, 2 ELR 20235 (D.D.C.1972), *aff'd without opinion*, 161 U.S.App.D.C. 238, 494 F.2d 1157, *cert. denied*, 419 U.S. 963, 95 S.Ct. 223, 42 L.Ed.2d 178 (1974), to support this assertion. In *Zlotnick*, plaintiffs owned an *empty lot* which was scheduled for condemnation under a modified Urban Renewal Plan because it was too small to accommodate the type of redevelopment required by the plan. Plaintiffs sought to enjoin condemnation of their property pending preparation of an EIS, contending that a less dense redevelopment plan might make the taking of their lot unnecessary and thus leave plaintiffs free to develop the property themselves. The court held that plaintiffs lacked standing to raise the NEPA objection because their interests did not fall within the zone of interests to be protected by the statute, noting:

Plaintiffs can at best claim only a remote, insubstantial, highly speculative and ephemeral interest in the environment. *They have nothing but their own financial interests to protect* as their continuing efforts to achieve financial settlement emphasize. Obviously they would abandon their environmental concerns in a moment if the price were right. (emphasis added)

The instant case can be easily distinguished from *Zlotnick*. In *Zlotnick* the court was clearly concerned that the plaintiffs were asserting an environmental interest as a cloak for their *solely* economic interest. Plaintiff's empty lot was not going to suffer any *environmental* damage under the renewal plan—it was simply too small to be developed by private interests as a separate lot. In the case at bar, defendant has assets in the form of natural resources which allegedly will be environmentally damaged by plaintiff's action. The most that can be said is that the underlying motivation for defendant's environ-

mental concerns is economic, but those concerns are real nonetheless.

Pure altruism is not a prerequisite to standing to sue under NEPA. As another court appropriately said with regard to this very point:

True, the plaintiffs are not primarily devoted to ecological improvement, but they are not on this account disqualified from seeking to advance such an interest. No group has a monopoly on working for the public good. *National Helium Corporation v. Morton*, 455 F.2d 650, 655 (10th Cir. 1971).

Were this court to adopt the government's contention that defendant be denied standing because its NEPA concerns are economically motivated, then the universe of legitimate NEPA plaintiffs would be severely constricted. Any profit-making corporation, for example, would be faced with the Catch-22 proposition of satisfying the "injury in fact" prong of the standing test, which would seem to *require* an economic motivation, while at the same time demonstrate that its interests are *not* economically motivated to satisfy the "zone of interests" prong. The court declines the invitation to pose such obstacles in the path of environmental litigation and finds that defendant has standing.

C. Sufficiency of NEPA as a Defense

■ The question of whether non-compliance with NEPA is a legally sufficient defense to a condemnation action is one of first impression in this circuit. Plaintiff argues that it is insufficient. To support this contention, plaintiff cites a very recent Eighth Circuit case, *U. S. v. 255.25 Acres of Land*, 553 F.2d 571 (8th Cir., April 20, 1977), in which the court rejected an asserted NEPA defense to a condemnation because "the only question for judicial review in a condemnation proceeding is whether the purpose for which the property is taken is for a . . . congressionally authorized use." Although other courts have made essentially the same statement, e. g., *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct.

98, 99 L.Ed. 27 (1954); *U. S. v. 80.5 Acres,* 448 F.2d 980, 983 (9th Cir. 1971), this court could find no other case, and plaintiff has cited none, which has made this statement *in the face of an allegation of violation of NEPA.*

This court is obviously not bound by an Eighth Circuit opinion and it finds the reasoning in *U. S. v. 255.25 Acres of Land* unpersuasive. NEPA, by its terms, applies to *all* federal agencies, and the EIS requirement in particular applies to *every* "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Moreover, § 4332, which sets forth the EIS requirement, provides:

> The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter.

Both the legislative history of NEPA and the case law indicate that the phrase "to the fullest extent possible" requires each federal agency to comply with the directives of § 4332 "unless the existing law applicable to such agency's operations expressly prohibits or makes full compliance with one of the directives impossible." *Major Changes in S. 1075 as Passed by the Senate,* 115 Cong.Rec. (Part 30) at 40417–40418. See *Calvert Cliffs Coordinating Committee v. Atomic Energy Commission,* 146 U.S.App.D.C. 33, 38, 449 F.2d 1109, 1114 (1971). Plaintiff offers no reason why it would be statutorily precluded from compliance with NEPA.

At least two district courts have recognized that non-compliance with NEPA is a defense to a taking. See *U. S. v. 247.37 Acres of Land,* 3 ERC 1098 (S.D. Ohio 1971); *Gibson v. Ruckelshaus,* 3 ERC 1028 (E.D. Texas 1971). Furthermore a leading authority on eminent domain urges that the requirements of NEPA should apply to the government's exercise of the condemnation power. *Nichols on Eminent Domain,* Vol. 6A, Chapter 33.2.

Although there is no Ninth Circuit precedent directly on point, *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1971), is very significant. In *Lathan,* plaintiffs sought and obtained an injunction against further acquisitions of property by highway officials pending, *inter alia,* the preparation of an EIS in accordance with NEPA. Though *Lathan* was not styled as a condemnation case, its significance lies in the fact that NEPA was held to apply to a planning stage *preliminary* to the actual acquisition of property. Nothing in the case indicates that the Ninth Circuit would have decided *Lathan* differently simply because the Department of Transportation had already begun condemnation proceedings.

The United States contends that the mere taking of title cannot be said to have any effect on the environment. However, in order for a taking to be valid, it must be for a public use. Thus, a condemnation action, by its very nature, is a decision to put land to a certain public use, which may have a significant effect on the environment. The taking and the use cannot be viewed separately: either the taking is for a public use, which requires NEPA evaluation, or it is not for a public use, in which case it is an improper exercise of eminent domain. This approach—inseparability of the taking and the public use for which the land is being taken—led the court in *U. S. v. 247.37 Acres of Land, supra,* to hold that NEPA is applicable to the exercise of eminent domain powers. This court adopts the same approach and reaches the same conclusion.

This court does not intend to suggest that the government must prepare an EIS in conjunction with every attempt to condemn property for public use, or even, for that matter, that an EIS is required in *this* case. It is sufficient at this point to hold simply that the decision to condemn land for a public use, just like any other federal agency decision, is subject to the application of NEPA. Whether or not an Environmental Impact Statement is required will still turn, as it does in any other context, on whether or not the agency's action is a major federal action significantly affecting the environment.

#### D. Requirement of an EIS

Plaintiff's final contention with respect to the NEPA issue is, even if NEPA is a defense to a condemnation, plaintiff has complied with it. Plaintiff maintains that BLM has determined that the present action is not a major federal action, and thus that no EIS is required.

Federal Rule of Civil Procedure 56(c) states that a motion for summary judgment shall be granted if the pleadings and matter accompanying them show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "principal question" that arises on a motion for summary judgment is whether material factual issues remain to be resolved at trial. *Bushie v. Stenocord Corporation*, 460 F.2d 116 (9th Cir. 1972).

■■ The court notes at the outset that the burden of persuasion is upon the moving party, and that the party opposing the summary judgment is given the benefit of all reasonable doubts in determining whether a genuine issue exists. *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Most importantly, affidavits may be used to determine *whether* issues of fact are in dispute, but *not* to resolve such disputes. See 10 Wright and Miller, *Federal Practice and Procedure*, Section 2725.

In determining whether an EIS is required, there are two material factual issues which must be resolved: the scope of the project, and the environmental consequences which may occur. Plaintiff maintains that the project which should be evaluated for NEPA purposes is quite simply the improvement of an existing road to provide access for the removal of dead, diseased, and mature trees and to provide access for the public to unimproved lands. The logging is not in a wilderness area, does not involve clear-cutting, and will result in the harvesting of only 20% of the commercial trees in the area subject to the timber sale contract.

Defendant counters that the project has four parts:

(1) the taking and reconstruction of the road;

(2) the construction of a campground at the Forks of the Butte;

(3) construction of a trail providing access to the campground; and

(4) the timber sale.

Defendant has provided the court with estimates made by Department of Interior personnel which indicate that a campground is anticipated to increase visitor days by a factor of *forty* and fishing by a factor of seven. (Defendant's Memorandum of Points and Authorities, Affidavit of Carl Lippenberger, Exhibit 4.) The Secretary, in deciding that an EIS was not required, allegedly considered only the timber sale and road reconstruction and failed to consider the campground and trail aspects.

Even without the construction of recreational facilities, defendant maintains that recreational use of the area will increase significantly. A BLM environmental analysis of the timber sale implies that improvement of the road alone will increase recreational use of the area. (Defendant's Memorandum of Points and Authorities, Lippenberger Affidavit, Exhibit 5.)

The primary battleground in the briefing by both parties concerns the scope of the project. Plaintiff seeks to discount defendant's contentions by saying that defendant is under the "mistaken belief" that a campground and trail is planned for the Forks of the Butte. This allegedly mistaken belief is based on statements set forth in a Management Framework Plan (MFP) for the area prepared by BLM in 1972. Such plans, says plaintiff, are obsolete, and no budget requests since 1972 have included appropriations for recreational facilities for Forks of the Butte. Plaintiff indicates that its normal procedure is to initiate an environmental assessment in conjunction with preparation of an Activity Plan, which is done after completion of an MFP and which establishes detailed guides to action and data for consideration in program planning. No current Recreational Activity Plan exists for the Forks of the Butte. Since no proposal for action exists, then, under the au-

thority of *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), plaintiff maintains that no EIS can be required.

Defendant, in addition to relying on the MFP prepared in 1972, assigns a great deal of weight to a letter sent by BLM to defendant on August 1, 1973, during negotiations concerning the acquisition of the easement. At that time, BLM said that its "basic justification" for seeking the easement is public access. Moreover, defendant maintains that the road will provide access to only a small portion of the timber sale area, and that the cost of reconstruction of the road will exceed the economic value of the timber thereby accessed. From this, defendant concludes that the taking was sought pursuant to an area plan contemplating increased public use of the road, and that, as a practical matter, the MFP is a proposal for action.

■ Placing the burden of persuasion upon plaintiff and giving the benefit of reasonable doubts to defendant, this court cannot summarily find that no genuine issue exists as to the scope of the project. Plaintiff seems to be saying that no genuine issue exists because it knows what it's going to do better than defendant does, and consequently the court should ignore defendant's contentions. However, an important purpose of NEPA is to provide outsiders with an insight into the internal decision-making of a federal agency in order to assure that the environmental consequences of its actions are considered in that decision-making process. *Calvert Cliffs Coordinating Committee v. Atomic Energy Commission, supra,* 146 U.S.App.D.C. at 1114, 449 F.2d at 38. It may well be that plaintiff will be able to prove at trial that its previous plans are obsolete and played no role in the decision to take defendant's lands, but defendant has done enough to raise an issue as to the status of those plans.

Until this factual dispute is resolved at trial,[2] the court cannot determine whether the NEPA standards for preparation of an EIS have been met. If the taking is one aspect of a larger recreational improvement scheme, then it quite possibly will be found part of a major federal action. Furthermore, determination of the projected increase in recreational use, even without government development of the campground and trail, is essential to decide whether the project may significantly affect the environment. On this state of the record, the court thus finds that a genuine issue of material fact exists and denies summary judgment on the NEPA defense.

## II. Financing Issue

Defendant contends that the taking is unlawful because it is part of a "scheme" whereby the Secretary of Interior seeks to build public lands development roads and trails (PLDR&T) with timber sale proceeds. Defendant asserts that the Secretary is not authorized to use timber sale proceeds to finance such roads because of 23 U.S.C. § 214(a), which reads:

Funds available for public lands development roads and trails shall be used to pay the cost of construction and improvement of such roads and trails.

Plaintiff characterizes the road as a *timber access* road, rather than a PLDR&T. Plaintiff argues that there is no Congressional objection to timber access roads providing public access to unimproved lands and cites legislative history of the Federal-Aid Highway Act of 1964 to support this proposition, as well as 43 U.S.C. § 1762, which reads in part:

The Secretary, with respect to the public lands, is authorized to provide for the acquisition, construction, and maintenance of roads within and near the public lands in locations and according to specifications which will permit maximum economy in harvesting timber from such lands . . . . Financing of such roads

2. The trial judge is to decide all issues, legal and factual, which may be presented in a condemnation action, other than the amount of compensation. FRCP Rule 71A(h); *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).

may be accomplished . . . , (2) by requirements on purchasers of timber and other products from the public lands . . . .

■ First, the court must determine whether the alleged illegal funding scheme is a valid defense to a condemnation action. Defendant obviously maintains that it is, and plaintiff does not question that it is but argues the point solely on its merits. It appears that the funding illegality would be a defense, since, if plaintiff is not authorized to use timber sale proceeds to construct and improve the road, then the taking is not for a Congressionally authorized public use.

■ As to the merits, this court finds that *both* plaintiff's and defendant's arguments are unconvincing. Defendant, without pointing to any peculiarities of this case, contends essentially that the Secretary can *never* finance PLDR&T except from appropriations designated for that purpose. However, 23 U.S.C. § 214(a) does *not* state or imply that such funds shall be the *exclusive* means of financing the construction of PLDR&T. Defendant seeks to buttress its conclusion by citing the legislative history of the statute, which states in part:

> Heretofore it has been the practice to construct most of the roads on Bureau of Land Management lands in forested areas through timber sale contract requirements. These roads may serve their primary purpose, but in most instances they are not adequate for the expanded use now placed on them. Construction of roads by timber sale purchasers places a burden on them, and the standards of the roads they provide are not adequate for the needs for full resource development. Senate Report No. 1997, 1962 U.S.Code Congressional and Administrative News pp. 3938, 3952.

This statement, while indicating that the justification for the appropriations is to ease the burden on timber purchasers, certainly does not suggest that the Secretary can finance PLDR&T only from these appropriations.

Plaintiff's position has a fatal flaw in that it proceeds on the *assumption* that Road No. 3607 will be a timber access road. Based on that assumption, plaintiff has established that it may be financed by timber sale proceeds. However, whether the road will be a timber access road is a fact in dispute. Defendant alleges that the stated purpose of gaining access to timber is a sham—that the timber accessed by the road cannot be economically logged due to the extensive improvements required in the road, that the timber sale contract was set up to make timber access *appear* to be the justification for the road, and that the real reason for the road is access to the Forks of the Butte.

Plaintiff has not addressed itself to the issue of whether the Secretary is authorized to use timber sale proceeds to construct a road whose primary purpose is *unrelated* to timber. Thus, the court is faced with the following situation: under plaintiff's version of the facts, i. e., that the road is a timber access road, plaintiff is entitled to judgment as a matter of law; under defendant's version of the facts, i. e., that the road's purpose is not for timber access, neither party has persuaded the court that it would be entitled to judgment. Since the burden is on the moving party to show that there is no dispute as to any material fact, and plaintiff has not discharged that burden, summary judgment on the financing issue is denied. However, it will be open to plaintiff to renew its motion for summary judgment, if it can establish that it is entitled to judgment no matter which way the factual dispute might be resolved.

III. Approval of the Secretary of Transportation

■ Both parties submitted arguments concerning whether the approval of the Secretary of Transportation is required for the reconstruction of Road No. 3607. In its last brief, plaintiff states that such approval has been obtained, apparently anticipating that the issue would thereby be rendered moot. Defendant, while conceding that the approval has finally been obtained, nonetheless maintains that the issue of whether it was required is not moot.

Defendant seeks to avoid mootness by bringing the approval issue within a doctrine set out in *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), where the Court said:

voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot. [citations] A controversy may remain to be settled in such circumstances . . . . The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. 345 U.S. at 632, 73 S.Ct. at 897, 97 L.Ed. at 1309.

This doctrine is not appropriate in this case. First, defendant has not made a showing or even an allegation that constructing PLDR&T without approval of the Secretary of Transportation is a *practice* of the plaintiff, i. e., something that has been done at times other than this one isolated instance. "Voluntary cessation of allegedly illegal conduct" would appear to require just that—a *cessation* of such conduct and not merely the abandonment of one such attempt. Second, and perhaps more important, *Grant* involved an action for an injunction, the purpose of which is to prevent *future* violations. There the concern of the court was with the possibility of a recurrence of illegal conduct. In the instant case, the concern of this court is with the legality of this condemnation action, and the approval of the Secretary of Transportation is no longer a part of this case or controversy.

This court therefore finds the approval issue to be moot.

*Motion to Strike*

Plaintiff has moved to strike defenses 2(b), 2(c), and 2(d) from defendant's answer. This motion is made pursuant to Federal Rule 12(f), which states:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

A motion to strike is a severe measure and is viewed with disfavor, but it remains the primary procedure for objecting to the insufficiency of a defense. See 5 Wright and Miller, *Federal Practice and Procedure*, Section 1380.

I. Defense 2(b)

 Defendant raises the following defense as defense 2(b) in the answer:

The interest in land sought to be taken is not required for any purpose authorized by law.

In arguing the sufficiency of this defense, plaintiff and defendant seem to be comparing apples and oranges. Plaintiff interprets the defense as raising a question concerning the *necessity* of this taking for the purported purposes behind it, and argues on that basis that it is legally insufficient. Defendant reads this defense as raising the issue of whether the stated purposes of the taking conform to those prescribed by the statute granting acquisition authority. This court finds that the defense is subject to being stricken under *either* interpretation.

Under plaintiff's reading of the defense, it must be stricken because the necessity of a taking is an administrative determination which is not subject to judicial review. *United States v. 80.5 Acres in Shasta Co., Cal.*, 448 F.2d 980, 983 (9th Cir. 1971); *United States v. Mischke*, 285 F.2d 628 (8th Cir. 1961); *Rindge Co. v. Los Angeles*, 262 U.S. 700, 709, 43 S.Ct. 689, 67 L.Ed. 1186 (1923).

Under defendant's interpretation of this defense, it must be stricken as redundant. To say that the stated purpose of a taking does not conform to the purposes prescribed by the statutes granting acquisition authority is to restate the proposition that the taking is not authorized by statute. This is precisely the issue raised by defense 2(a), which was unsuccessfully attacked above in defendant's summary judgment motion.

Plaintiff's motion to strike defendant's defense 2(b) is therefore granted.

## II. Defenses 2(c) and 2(d)

■ Defense 2(c) states:

The purported taking is arbitrary and capricious and constitutes a clear abuse of discretion.

Defense 2(d) states:

The purported taking constitutes a waste of public funds, in that the just compensation, including severance damages, payable to defendant will greatly exceed the cost of alternate access over plaintiff's own lands.

Plaintiff seeks to strike defense 2(c) by suggesting that arbitrary and capricious conduct will not invalidate a taking and only "egregious bad faith" will. Even if arbitrary and capricious conduct is a sufficient defense, plaintiff contends that defendant has not alleged any facts to support such a conclusion. As to defense 2(d), plaintiff characterizes it as an attempt to invoke judicial review of the necessity of the taking.

Defendant justifies defense 2(c) by saying that the courts will review an administrative decision to determine if it was arbitrary and capricious, and affirmative defenses may be generally pleaded under Federal Rule 8. Defendant characterizes defense 2(d) as an elaboration of 2(c), i. e., that the waste of public funds makes the decision arbitrary and capricious.

To support its position that arbitrary and capricious conduct will not invalidate a taking, plaintiff relies heavily upon *U. S. v. 416.18 Acres of Land*, 514 F.2d 627 (7th Cir. 1975). In affirming the striking of an allegation that the government's actions were arbitrary and capricious, the Court said:

Though appellant's statement pieces together and rewrites different grounds from different objections, we will accept his version as the strongest presentation of his dual claims that the proposed taking was not for a public purpose and was arbitrary and capricious. Even under those circumstances, however, he has not

alleged any sufficient defense. The only question for judicial review in a condemnation proceeding is whether the purpose for which property was taken is for a Congressionally authorized public use. [citations] It is not for the courts to review the necessity of the taking. [citations] Nor is it for the courts to consider broadside allegations that the purported public use to be served is merely a pretense or a sham to cover arbitrary official conduct. [citations] Only in cases of egregious bad faith will the right to condemn be denied. *Id.* at 631–2.

While this discussion by the Seventh Circuit certainly seems to support plaintiff's position, nonetheless it conflicts with the most recent statement from the Ninth Circuit on the same point. In *Southern Pacific Land Company v. United States*, 367 F.2d 161 (9th Cir. 1966), the court, while not deciding the issue, noted:

the Supreme Court itself has declined to rule out the possibility of judicial review where the administrative decision to condemn a particular property or property interest is alleged to be arbitrary, capricious, or in bad faith. *United States v. Carmack*, 329 U.S. 230, 243–244, 67 S.Ct. 252, 91 L.Ed. 209 (1946). And various courts of appeal, including this one, have *said* that an exception to judicial non-reviewability exists in such circumstances. *Simmonds v. United States*, 199 F.2d 305, 306–307 (9th Cir. 1952); *United States v. 64.88 Acres of Land*, 244 F.2d 534, 536 (3d Cir. 1957); *United States v. Certain Real Estate*, 217 F.2d 920, 926–927 (6th Cir. 1954); *United States v. Certain Parcels of Land*, 215 F.2d 140, 147 (3d Cir. 1954); and *United States v. Meyer*, 113 F.2d 387, 392 (7th Cir. 1940). See also *Wilson v. United States*, 350 F.2d 901, 906–907 (10th Cir. 1965); *United States v. 91.69 Acres of Land*, 334 F.2d 229, 231 (4th Cir. 1964); and *United States v. State of New York*, 160 F.2d 479, 480 (2d Cir. 1947). *Id.* at 162.

In light of this statement and the Ninth Circuit's numerous citations to other circuits, this court does not find the single

Seventh Circuit opinion to be persuasive authority.

Even if arbitrary and capricious conduct may be a defense to a taking, plaintiff contends that defense 2(c) must be stricken for failure to set forth factual statements. Again, plaintiff relies in large measure on *U. S. v. 416.18 Acres of Land, supra*, where the Seventh Circuit said:

> Although it is said that a motion to strike a defense is "not favored" by the courts because of its potential as a dilatory tactic, see 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1381 (1969), it is nonetheless "a useful and appropriate tool" for weighing the legal implications to be drawn from uncontroverted facts, id. In this regard, a Rule 12(f) motion "admits only facts well pleaded, and mere conclusions of law, not warranted by the asserted facts have no efficacy." *United States v. Certain Parcels of Land in Cheyenne, Wyo.*, 141 F.Supp. 300, 305 (D.Wyo.1956). *Id.* at 631.

Were defense 2(c) to be considered by itself, plaintiff's contention might have merit. However, this court is mindful of defendant's construction of defense 2(d) as an elaboration of defense 2(c). Viewing the pleadings in the light most favorable to the defendant, 5 Wright and Miller § 1381, the court finds that defendant has alleged sufficient facts in defenses 2(c) and 2(d) to raise the single defense of arbitrary and capricious conduct. It should be emphasized that the rules of pleading are quite liberal, and also that plaintiff has had sufficient notice of defendant's contentions to frame a response and has not been prejudiced by any lack of specificity. Courts are generally reluctant to strike a defense in the absence of a showing of prejudice to the moving party. See *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962); *Coca-Cola Company v. Howard Johnson Company*, 386 F.Supp. 330 (N.D. Ga.1974); *Ryer v. Harrisburg Kohl Bros.*, 53 F.R.D. 404, 408 (M.D.Pa.1971).

To the extent that defense 2(d) raises the necessity of the taking, it is subject to being stricken due to the non-reviewability asserted by plaintiff. In other words, being a waste of public funds will not *per se* be a defense to the taking but may have a bearing on whether plaintiff's action was arbitrary and capricious.

With that proviso, defenses 2(c) and 2(d) will be allowed to remain to the limited extent that they raise the single defense of arbitrary and capricious conduct, and plaintiff's motion to strike them is denied.

In sum, this court grants plaintiff's motion to strike defense 2(b) and denies all other motions.

IT IS SO ORDERED.