UNITED STATES of America, Plaintiff,

v.

**0.95 ACRES OF LAND, MORE OR LESS, IN YAKIMA COUNTY, WASHINGTON, Mark Herke, Mary A. Bailey, Carl J. Herke, John Herke, Yakima County, Washington, a Municipal Corporation, and Unknown Owners, Defendants.**

UNITED STATES of America, Plaintiff,

v.

**12.84 ACRES OF LAND, MORE OR LESS, IN YAKIMA COUNTY, WASHINGTON, Mark Herke, Mary A. Bailey, Carl J. Herke, John Herke, Yakima County, Washington, a Municipal Corporation, and Unknown Owners, Defendants.**

Nos. CR-90-3034-AAM and CR-90-3035-AAM.

United States District Court, E.D. Washington.

May 28, 1991.

John E. Lamp, U.S. Atty., Thomas O. Rice, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Constance E. Brooks, Davis, Wright, Tremaine, Portland, Or., for defendants.

## ORDER

McDONALD, District Judge.

The United States moves for reconsideration of this court's order denying its motions for summary judgment, vacating the declarations of taking and orders of possession, and remanding this case to the Forest Service for preparation of an environmental assessment. Specifically, the United States now argues: (1) this court cannot

vacate the declarations of taking and orders of possession because this case in a condemnation action brought pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a, *et seq.*, and Fed.R.Civ.P. 71A; and (2) this court lacked jurisdiction to review Forest Service actions taken pursuant to this timber sale under section 318 of the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990, Pub.L. No. 101–121, 103 Stat. 701, 745–50 (1989) (hereafter section 318).

## I.

■ The United States argues that vacating the declarations of taking and orders of possession is not within the ambit of this court's authority. Citing to Ninth Circuit cases, the government argues that under 40 U.S.C. §§ 257 and 258a upon the filing of the declaration of taking, title passes to the government and this court is powerless to dismiss the proceeding. *United ed States v. Hayes*, 172 F.2d 677, 679 (9th Cir.1949). The only question for judicial review in a condemnation proceeding is whether the purpose for which the property is taken is for a congressionally authorized use. *United States v. 80.5 Acres*, 448 F.2d 980, 983 (9th Cir.1971).

However, as the court in *United States v. 18.2 Acres*, 442 F.Supp. 800, 807 (E.D. Cal.1977) recognized, the Ninth Circuit had not so held "in the face of an allegation of violation of NEPA." While its reasoning is similarly persuasive, the bottom line in *United States v. 18.2 Acres* is that the court found non-compliance with NEPA a legally sufficient defense to a condemnation action. *Id.* *18.2 Acres* involved facts under which the government sought an easement over a private road which would have necessarily established public access to which the property owner objected. The court wrote:

> [I]n order for a taking to be valid, it must be for public use. Thus a condemnation action, by its very nature, is a decision to put land to a certain public use, which may have a significant effect on the environment. The taking and the use cannot be viewed separately; either

the taking is for a public use, which requires NEPA evaluation, or it is not for public use, in which case it is an improper exercise of eminent domain. This approach—inseparability of the taking and the public use for which the land is being taken—led the court in *United States v. 247.37 Acres of Land* [3 ERC 1098 (S.D.Ohio 1971)], to hold that NEPA is applicable to the exercise of eminent domain powers. This court adopts the same approach and reaches the same conclusion.

*United States v. 18.2 Acres*, 442 F.Supp. at 807.

Subsequent cases in other districts faced with the same issue have purported to distinguish *18.2 Acres* claiming under their facts the exercise of eminent domain power is not so closely linked to the ultimate public use that land acquisition sets in motion an irresistible force of environmental degradation. *Stand Together Against Neighborhood Decay, Inc. v. Board of Estimate*, 690 F.Supp. 1192 (E.D.N.Y.1988) (denial of a motion to enjoin condemnation proceedings because of a failure to show irreparable harm stemming from the government's failure to comply with NEPA); *United States v. 27.09 Acres of Land*, 737 F.Supp. 277 (S.D.N.Y.1990) (failure to comply with NEPA could not be used as a means to enjoin condemnation proceedings). These courts found *18.2 Acres* to be a case in which the taking was inseparable from the use to which the land would be put.

The Declaration of Taking of Clayton Yeutter, Secretary of Agriculture, states that "the public uses for which said property is to be taken are for construction, reconstruction, improvement, maintenance and permanent use of a forest development road in connection with the Wenatchee National Forest, for use in the conservation preservation, protection, utilization and general administration of said forest, and for all other lawful purposes." While the declaration of taking is couched in general terms, there is no mistaking that the land was taken solely for the purpose of constructing a road system to access the Tenday Timber Sale.

Even courts which don't recognize failure to comply with NEPA as a defense to a condemnation action acknowledge one of the primary purposes of NEPA—to present governmental decision makers with relevant environmental data before they commit themselves to a course of action. *United States v. 27.09 Acres of Land,* 737 F.Supp. at 282–83. That purpose has not been served in the instant case because the Forest Service decided to build the new road system, and take the Herke's property, without considering all relevant environmental data. Unlike *27.09 Acres* and *Stand Together Against Neighborhood Decay,* the eminent domain power in this case is so closely linked to the ultimate public use that land acquisition has already set in motion an irresistible force of environmental degradation. This is evidenced by the fact that the government has already entered into contracts for the construction of roads over the land at issue and, judging from the declarations recently filed, the work is set to begin immediately. The court's order was a proper exercise of its equitable powers.

## II.

■ The government next argues that section 318(f)(1), Pub.L. 101–121, 103 Stat. 745–750 (1989) precludes judicial review of the Tenday Timber Sale. Section 318(f)(1) states:

Not later than two days after enactment of this Act, the Forest Service shall submit to plaintiffs in the captioned case Seattle Audubon Society et al., v. F. Dale Robertson, Civil No. 89–160, a list of sales which had been prepared for offer in fiscal year 1989 and which contain at least 40 acres of suitable spotted owl habitat. Not later than fourteen days after receipt of such list, plaintiffs to the suit referenced in this subsection may enter into an agreement with the Forest Service releasing for sale not less than one billion one hundred million board feet of net merchantable timber. Such sales must be available for advertisement not later than fourteen days after the agreement required by this subsection is reached. *Such timber sales selected* *shall not be subject to further judicial review by any court of the United States.* (emphasis added).

The government concludes that because the Tenday Timber Sale is part of the timber sales identified to be sold pursuant to 318(f)(1), this court has no power to review it. The government is incorrect.

First, section 318 does not repeal or amend any environmental law. *Seattle Audubon Society v. Robertson,* 914 F.2d 1311, 1316 (9th Cir.1990). Section 318's requirements are in addition to those imposed by the general environmental statutes, which remain in full effect.

The clear effect of subsection (b)(6)(A) [of 318] is to direct that, if the government follows the plan incorporated in subsection (b)(3) and (b)(5), then the government will have done what is required under the environmental statutes involved in these cases. Thus, if the Secretary does follow subsections (b)(3) and (b)(5) by observing their limitations on owl habitat, then the Secretary will be deemed in fact to have met as well the requirements of several environmental statutes.

In this way Congress, through section 318, seeks to perform functions reserved to the courts by Article III of the Constitution. For example, if the Secretary follows subsection (b)(3) and (b)(5), then the Secretary will be found to have used the "principles of multiple use and sustained yield" and the "systematic interdisciplinary approach" mandated by the Federal Land Policy and Management Act, 43 U.S.C. § 1712(c)(1) and (2). In addition, the agency will be deemed to have included detailed statements of adverse environmental effects and alternatives required under NEPA, 42 U.S.C. § 4332. Also, there will have been no taking of habitat as proscribed under the Migratory Bird Treaty Act, 16 U.S.C. § 703.

*Id.*

Second, by its plain language section 318(f)(1) only precludes judicial review of the specifically selected *timber sales,* not

decisions to construct road systems which access the timber sales. The defendants in the instant case have not in any way directly challenged the Tenday Timber Sale. Moreover, the court's ruling does not prohibit logging the Tenday area, but instead, prohibits construction of a new road system to access the sale.

Based upon the foregoing, IT IS HEREBY ORDERED that the United States' Motion for Reconsideration be DENIED.

IT IS SO ORDERED.